Leach v. The Hannibal & St. Joe Ry. Co.

LEACH v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant*.

1. **Personal Service, Contract for.** When one enters into a contract of service for another for a fixed salary, or compensation, he, *prima facie*, agrees to give the latter his entire time, and the rendition of service by the employe, as a notary public in the employer's business, does not make the latter liable for the statutory fees therefor, in the absence of an agreement or understanding to that effect, or a course of conduct between the parties showing such fees were not to be included in the employe's salary.

2. **Question for the Jury.** Whether such fees were included in the employe's salary is a question of fact for the jury to determine from the evidence, under proper instructions.

3. **Evidence.** Receipts given by the employe to the employer, stating that the sums therein mentioned were in full for all demands for work done during regular and irregular hours, in the employer's service, are admissible in evidence in an action for such fees, and are *prima facie* evidence of payment as therein expressed, and such receipts are also competent evidence to show the capacity in which the employe acted, and the relation he sustained to the employer.

4. ———. It was also competent for defendant, on the trial of such cause, to show that the services of plaintiff, as notary, were performed during regular business hours, while he was in defendant's service.

*Appeal from Hannibal Court of Common Pleas:—*
HON. JOHN T. REDD, Judge.

REVERSED.

*G. W. Easley* for appellant.

(1) The plaintiff could not recover on an implied promise to pay for the services rendered. The services being rendered by plaintiff, while in the employment, the law implies that the services were rendered under the contract of employment, unless the contrary be

shown. *Ross v. Hardin*, 79 N. Y. 85; Wood on M. &
S., sec. 90; *Stansbury v. United States*, 1 Ct. of Cl., 123;
Smith on Master and Servant (3 Eng. Ed.) 130;
*Guthrie v. Merrill*, 4 Kan. 187. (2) The receipts offered
in evidence were *prima facie* evidence of payment for
all services rendered during regular and irregular work-
ing hours, during the period of time covered by them,
and the court committed error in excluding said receipts.
2 Whart. on Evid., sec. 1365, and note. (3) The seventh
instruction, given by the court on its own motion, did
not properly put the question of defendant's damages
on its counter-claim before the jury. (4) The verdict
and judgment being of the record proper, and it appear-
ing that no judgment was rendered in favor of the de-
fendant, on its counter-claim, the judgment must be
reversed. Almost the entire costs of this litigation were
made upon the counter-claim, yet, for want of a judg-
ment in its favor, the defendant cannot recover its costs.

*H. B. Leach pro se.*

(1) There was no evidence that the duties of a
notary public were embraced within the duties he was
employed to perform as a servant of appellant, or that
his salary included his fees as a notary public, hence the
first and second instructions were properly refused.
(2) Defendant had no ground of recovery growing out of
the management by plaintiff of the suit of Johnson
against it. Wharton on Neg., secs. 746 and 747; Shar-
man & Redf. on Neg., sec. 211, note 2, and sec. 212;
*Pennington v. Yell*, 6 Eng. (Ark.) 212; *Harter v. Mor-
ris*, 18 Ohio St. 492. (3) The receipts offered in evi-
dence were not admissible; they specify for what services
they were given; fees as a notary are not named, and
hence not included.

RAY, J.—The respondent was, for a number of years

prior to 1878, in the appellant's employ as agent to settle claims for stock killed or injured on the railroad, and as assistant for Mr. Carr, who was the general attorney of appellant, and for his services in these behalfs, received a regular salary. During the time of said employment, respondent was appointed and qualified as a notary public, and as such took the acknowledgment of numerous deeds, by defendant, through its land commissioner, and also certified to affidavits of appeals, and also to answers in garnishment made by the appellant, when directed to do so by Mr. Carr. Plaintiff was discharged from said employment by defendant in 1878, and thereafter brought this suit to recover of defendant for said services so rendered as said notary, during his said employment. The plaintiff's claims therefor were appropriately declared on and set out in his petition. There is no conflict, as we gather from the record, as to the actual rendition of said services, or that the rates charged were not such as are authorized by law therefor.

Defendant's answer, so far as we need consider the same, set up said employment of respondent by appellant in the capacities aforesaid, and that the rendition of said notarial service sued for was in due course of said employment, and included in his said compensation, which was duly paid and received. Defendant's answer further set up, by way of counterclaim, that during his employment as its agent, and as an assistant attorney-at-law, one R. M. Johnson began an action against the appellant, before a justice of the peace, to recover four hundred dollars for damages for killing a horse by defendant's cars, and alleged it was respondent's duty to settle said claim and suit, if a legal demand, and if not, to use proper care, ability and diligence, in the defence thereof ; that respondent attended the trial thereof before the justice of the peace, and was there offered, and refused, a settlement thereof for the sum of one hundred and sixty dollars. Upon a trial

thereof judgment was rendered for plaintiff therein, and said cause was appealed to the circuit court of Marion county, where, on account of this plaintiff's negligence, judgment was rendered by default against this appellant for the said sum of four hundred dollars, whereby appellant claims to have been damaged in said sum, and asks judgment therefor.

The reply of plaintiff, so far as we deem the same material, denied that, by the terms of his agreement, he agreed to serve defendant as an attorney at law, but claims and avers he agreed to give such assistance as he could in his capacity as stock agent, on the trial of causes for injury to stock, and that he was not in defendant's employ in any other capacity. It admits respondent's refusal to settle the Johnson claim, and his defence thereof as stock agent before the justice, but denies that it was his duty to manage said cause, or attend the same in the circuit court. The trial resulted in a verdict for plaintiff on his said account in the sum of $653.50, and for defendant for one cent on his counterclaim. Judgment was entered in plaintiff's favor for said sum, and defendant appealed therefrom to this court.

The defendant, upon the trial, offered in evidence the monthly pay rolls of the company for each month of the years 1873, 1874, 1875, 1876, and 1877, precisely like the one herein set out for the month of February, 1877, except that the amount of the monthly salary raised from one hundred and twenty to one hundred and fifty dollars per month, for the purpose of showing payment of all services during the time covered by them, and to show that the plaintiff was acting, during that time, as assistant attorney. The court admitted the pay rolls from April to October, 1877, inclusive, for the purpose only of showing the capacity in which the plaintiff was employed, and refused to admit those from April to October, 1877, for any other purpose, and refused to admit

those for the balance of the year 1877, or for any of the other years, for any purpose whatever. In the monthly pay roll for February, 1877, plaintiff's name stands opposite the number thirty-five, and he is designated as stock agent and assistant attorney at one hundred and thirty-five dollars for the month, and his name written on the thirty-fifth line of said pay roll, and under the following receipt:

"I acknowledge to have received from the Hannibal & St. Joseph Railroad Company the amount opposite my name in the following list, in full for all demands for work done during regular and irregular working hours, in the service of said Hannibal & St. Joseph Railroad Company, up to, and including, the date of this pay roll."

This evidence was excluded by the court, as was also the following question directed to the plaintiff; "Q. Was the business of taking affidavits and acknowledgments performed during the regular business hours, during the time you were employed by the defendant?" This action of the court was, we think, erroneous. Whether these notarial services were distinct from, and independent of, and not embraced in, the plaintiff's contract of service, was, we think, a question of fact to be determined under proper instructions, from a consideration of all competent evidence that might be offered thereon by the parties. The pay rolls, or receipts, thus offered, were *prima facie* evidence of payment as therein expressed, for all services rendered the defendant during regular and irregular hours, and they were competent and receivable for that purpose, as well as to show in what capacity Leach acted, and the relation he bore to the company. *Prima facie*, respondent sold and hired to defendant his entire time for this salary, fixed and agreed upon between them, and the rendition of service by respondent as notary in and about the defendant's business during the said time, did not make

defendant liable for the statutory fees therefor, without some agreement, or understanding, or line of conduct between the parties, showing they were not to be included. Plaintiff's earnings, during the time of such employment, would belong to the employer. *Stansbury v. United States*, 1 Ct. of Cl. 123; Wood's M. & S. 198; 2 Wharton on Ev., sec. 1365, and note.

As bearing further upon this question, the inquiry made of plaintiff as to whether the affidavits and acknowledgments were taken during the regular business hours might, we think, have been properly allowed. As the case must go back for re-trial, we may add that we see no prejudice to the defendant in the court's ruling upon the counter-claim in the then state of evidence. Although the Johnson claim may have constituted a legal liability against defendant, plaintiff's duty to settle the same was not an absolute one—he was not bound to give a sound opinion on that question, and in rejecting the offer plaintiff probably relied upon the statement of defendant's witness, who, upon the trial, may have been contradicted and disbelieved. We can see nothing upon which to base an action of negligence for a failure to settle said claim. As there was no evidence showing defendant's pecuniary damage, or loss by the defendant in the circuit court, the instruction for nominal damages was, we think, correct.

For these reasons, the judgment of the court of common pleas is reversed and the cause remanded for further proceedings in conformity hereto. All concur.