THE STATE ex rel. WILLIAM K. BIXBY, ROBERT BROOKINGS and MAX KETANY v. CITY OF ST. LOUIS and FREDERICK H. KREISMANN, Mayor.

**In Banc, March 20, 1912.**

1. **FORMER DECISIONS: Authority: Limited to Facts.** The language used in any opinion is to be interpreted in the light of the facts and issues held in judgment in the concrete case. General language is not to be disconnected from those facts and issues and applied mechanically or automatically to the different facts and issues of another case. The reasoning, illustrations and references contained in an opinion are not authority or precedent, but only the points arising in the particular case and which were decided by the court are.

2. ————: **Void Proviso: Decision Limited to That: Museum of Fine Arts: Taxation.** The case of State ex rel. Board of Control of St. Louis School and Museum of Fine Arts v. City of St. Louis, 216 Mo. 47, was directed to holding invalid the proviso in section 3 of the Act of 1907, which turned over to a self-perpetuating board of an auxiliary branch of Washington University the tax authorized by the act to be levied and collected, and was not meant to hold and did not hold that the whole act was void, if the administrative board to manage the fund was appointed by the mayor in the manner provided by the words of that section preceding that proviso. It was not held in that case that the act was passed for the mere purposes of the proviso, that is, that the tax was to be levied and collected for the use of the board of control of the St. Louis School of Fine Arts, which was an auxiliary assistant to the board

of Washington University. The effect of that decision was that the taxes so collected could not be turned over to that board of control, which was the relator, suing for the fund in that case. The case is *stare decisis* only to the point of holding the proviso unconstitutional. The rest of the act was not held in judgment in that case.

3. **UNCONSTITUTIONAL LAW: Invalid in Part: Presumption.** The presumption that where a law is unconstitutional in part the whole is invalid, is of doubtful existence. On the contrary, the court approaches the constitutionality of every law with a strong, even a violent, presumption that it is valid; and if the invalid part is separable from the rest, the presumption is that the rest is valid.

4. ————: **Museum of Art Tax: Proviso Invalid: Rest Valid.** The Act of 1907, authorizing the city of St. Louis to levy and collect a one-fifth mill tax for a public art museum, and providing that when said act shall have been approved by a vote of the people the mayor, with the approval of the municipal assembly, shall appoint an administrative board of nine members to control the expenditure of the art museum fund, is this far constitutional; but the proviso, namely, that if there be already in such city a legally constituted administrative board of public property devoted by law to the uses of an art museum (referring, as a matter of fact, to an existing board of control of an art museum which had become a part of Washington University), "such board and its successors shall be the board of control of the art museum," and have and expend the public tax, is invalid. But it cannot be said that the proviso furnished the whole legislative inducement for the act, and the invalid proviso being separable from the rest, and ancillary thereto, the rest is valid and constitutional; and it is the duty of the city, since the act has been approved by the people, to levy the tax, and of the mayor to appoint an administrative board.

5. ————: **Meaning Ascertained from Title.** The title of a law is of significance in getting at its intendment; and the consistency between the title and the main body of the act is important in determining whether the whole was made to depend on a proviso contained in a single section

6. ————: **Vicious Intendment.** In getting at and enforcing the intendment of the lawmaker the courts will not hold his intendment to be vicious or his law as amounting to nothing at all, unless driven thereto by imperative reasons.

## Mandamus.

Writ awarded.

*A. & J. F. Lee,* and *Charles M. Polk* for relators.

(1). Relators have a right to maintain this action. State ex rel. v. Hoblitzelle, 85 Mo. 625. (2) ·The mayor has a discretion to say who shall be appointed but not to say whether a board shall or shall not be appointed. Laws 1907, secs. 1, 2 and 3, pp. 94, 95, 96; State ex rel. v. Francis, 95 Mo. 56; State ex rel. v. Jones, 155 Mo. 576; State ex rel. v. Public Schools, 134 Mo. 311; High on Extraordinary Legal Remedies, sec. 324, 325; 26 Cyc. 251; Kelly v. Van Wyck, 35 Misc. N. Y. 210; Laud v. Lynd, 44 Pa. St. 336. (3) The mayor does not enjoy immunity from judicial control like the Governor of a State or the President of the United States, and the city can be compelled by mandamus to levy and collect the tax imposed ·by law. State ex rel. v. Noonan, 56 Mo. App. 528; State ex rel. v. Gates, 190 Mo. 546; State ex rel. v. Rainey, 74 Mo. 236; State ex rel. v. Trustees, 61 Mo. 158; 26 Cyc. 320; State v. Patton, 108 Mo. App. 26; 26 Cyc. 330; Brooks v. Schultz, 178 Mo. 222. ˙ (4) No ordinance of the city is necessary to carry into effect the Act of 1907, for that Act is automatic. Tharp v. Biscuit Co., 179 Mo. 553. (5) The Act of 1907, Laws 1907, p. 94, is constitutional. 20 Am. & Eng. Enc. Law (2 Ed.), 1218; 20 Am. & Eng. Enc. Law (2 Ed.), 1221; State v. Board of Education, 141 Mo. 550; State ex rel. v. Field, 119 Mo. 614; State ex rel. v. Owsley, 122 Mo. 68; State ex rel. v. Mason, 153 Mo. 43; State ex rel. v. Mason, 155 Mo. 499; State ex rel. v. County, 144 Mo. 275; State ex rel. v. Holliday, 70 Mo. 137; State ex rel. v. County Court, 34 Mo. 546; Hauessler v. St. Louis, 205 Mo. 656. (6) The constitutionality of the Act of 1907, was not passed upon in the case of State ex rel. Board of Control of the St. Louis School and Museum of Fine Arts v. City of St. Louis, 216 Mo. 47. County Court v. Griswold, 58 Mo. 99; State v. Railroad, 89 Mo. 44; Carroll v. Campbell, 108 Mo. 550; Water Co. v. Neosho,

136 Mo. 510; Kansas City v. Bacon, 147 Mo. 273; Haag v. Ward, 186 Mo. 339; State ex inf. v. Ins. Co., 152 Mo. 49; Cooley on Constitutional Limitations (7 Ed.), p. 246.

*Lambert E. Walther* for respondents.

(1)   The Act of 1907 is unconstitutional and was so held by this court in the case of State ex rel. v. City of St. Louis, 216 Mo. 47.   (2)   Where part of an act has been declared invalid and the remaining portion comes up for consideration as to whether it can stand as an independent proposition, the presumptions are generally against it.   Skagit v. Stiles, 10 Wash. 388. (3)   Even though the portion of an act declared invalid be distinct and separable from the remainder of the act, yet if it be apparent that the Legislature would not have passed the remainder without the invalid portion, then the whole act falls with the invalid part.   Sutherland's Statutory Construction (2 Ed.), sec. 302; Enderlich on Interp. of Stat., sec. 538; State ex rel. v. Nast, 209 Mo. 708; Ex parte Smith, 231 Mo. 111; State ex rel. v. Railroad, 195 Mo. 228; State ex rel. v. Donsman, 28 Wis. 541; Eckerson v. Des Moines, 137 Ia. 480; State ex rel. v. Bd. of Sup., 62 Wis. 376.   (4)   "If by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent and the whole would be made void by the invalidity of such part."   Sutherland on Stat. Constr. (2 Ed.), sec. 306; Copeland v. St. Joseph, 126 Mo. 147; Connolly v. Pipe Co., 184 U. S. 540; State ex rel. v. Bd. of Sup., 62 Wis. 376; Mathews v. People, 202 Ill. 389.

LAMM, J.—Mandamus.   Original proceeding.   On final submission the cause stands on relators' motion for judgment on the pleadings.

Relators (hereinafter called plaintiffs) sue as residents and taxpayers of St. Louis in their own behalf and in behalf of all persons of like kind and situation desiring to join and share the expense. Complaining of respondents (hereinafter called defendants), they charge that the Forty-fourth General Assembly enacted a law (approved March 7, 1907, Laws 1907, p. 94) with the following title: "An act providing for the establishment, extension and regulation of museums of art, in cities of four hundred thousand inhabitants or more, or which may hereafter have four hundred thousand inhabitants or more, and authorizing taxation for the same, with emergency clause." Pleading the provisions of that act, they state that, as therein provided, an election was petitioned for, ordered and held in St. Louis; that thereat, to-wit, at the regular city election in April, 1907, the voters of the city (by a vote of 27,721 for, as against a vote of 7606 against) voted a one-fifth mill tax for a public art museum; that subsequently plaintiffs requested and demanded of defendant city and its officials that they fix a rate for such art museum tax and make a levy thereof as authorized and provided in said Act of 1907, and by the voters of the city at said election, keeping the total taxes within the constitutional limitation upon the taxing power; that the city and its officials failed and refused to accede to such demand and request; further, that plaintiffs made a demand and request at the same time that defendant mayor appoint and submit to the legislative branch of the municipal government for its approval an administrative board of nine members to control the expenditure of the art museum fund and otherwise to perform the duties prescribed by the act for said board to perform, and that then and ever since defendant mayor failed and refused so to do; that plaintiffs, being otherwise remediless in the premises, pray an alternative writ of mandamus issue to defendants to show

cause, if any they have, why such board should not be appointed and submitted for such approval and why said tax should not be levied.

An alternative writ issued, narrating the allegations of the petition, and defendants were cited to show cause.

Replying to that citation defendants make return in effect confessing the allegations of the alternative writ, and for cause of their failure to appoint the board and levy the tax, plead that the Act of 1907 is unconstitutional and void, that its unconstitutionality has been declared by this court in a cause determined here entitled: "The State ex rel. Board of Control of St. Louis School and Museum of Fine Arts v. City of St. Louis." [*Vide*, 216 Mo. 47.]

Plaintiffs' counsel, doubtless on the maxim that abundant caution does no injury, and being without the gift of prophecy and, therefore, in the dark on the scope and tenor of defendants' ultimate position, file here a memorandum brief supporting their right to a writ. That memorandum brief has been carried forward as live matter in their printed brief on final submission. Among others, that brief asserts and cites authorities to sustain the following propositions:

(a) Plaintiffs have a right to maintain this action.

(b) The mayor has a discretion to say who shall be appointed, but not to say whether a board shall or shall not be appointed.

(c) The mayor does not enjoy immunity from judicial control like the Governor of a State or the President of the United States, and the city can be compelled by mandamus to levy and collect the tax imposed by law (and the vote of the people).

(d) No ordinance of the city is necessary to carry into effect the Act of 1907, for that act is automatic.

By the brief of the learned chief law officer of the city, Mr. Walther, defendants raise no issue at all on propositions "*a*," "*b*," "*c*" and "*d*." Such form of submission in a controversy presented to a court must be taken as a conclusive confession that defendants admit propositions thus advanced and not controverted, and fall back on a flank attack by way of avoidance. The city and its mayor admit the passage of the law, the election, the result, the demands and their failure, and that relief is due in the form prayed unless the law is worthless because of invalidity. The cause, then, may proceed with such confession assumed, and we shall waste neither time nor labor examining or ruling propositions not controverted. In fact defendants, as was meet and proper under the circumstances, put all their eggs in one basket, as appears not only in their return but ·in their statement of the case, the latter summing up the whole controversy as hanging on a single thread, viz.:

"The respondents contend that this act is unconstitutional and was so declared by the Supreme Court ·of the State of Missouri in the case of State ex rel. Board of Control of the St. Louis School and Museum of Fine Arts v. City of St. Louis, 216 Mo. 47, and that therefore there is no authority for the doing of the acts commanded by the alternative writ.

"Relators say that only the proviso of section 3 of the Act of March 7, 1907, was declared invalid by this court, and that the proviso is separable from the remainder of the act, and, if eliminated, that there is still left a complete constitutional enactment."

The question then is: Is the Act of 1907 constitutional? Plaintiffs affirm and defendants deny that it is. Defendants affirm and plaintiffs deny that the constitutionality of the act was passed upon in the mentioned case. Let us deal with the last issue first.

I.  Of the decision in State ex rel. Board of Control of the St. Louis School and Museum of Fine Arts v. City of St. Louis, 216 Mo. 47.

(a)  As leading up to a determination of the scope and effect of that decision a foreword will not be unprofitable.  There is a pronounced line of demarcation between what is *said* in an opinion and what is *decided* by it—between arguments, illustrations and references on one side and the judgment rendered on the other.  The language used by a judge in his opinion is to be interpreted in the light of the facts and issues held in judgment in the concrete case precisely as in every other human document.  Let us put a homely case to illustrate.  Once upon a time there was kept, screwed against an end of each car on a certain railroad, a sealed cabinet or case with a glass front. In this case were conspicuously displayed an ax, a hammer and a saw.  The glass front bore the legend in bold letters: "In case of accident break this glass." Suppose John, a passenger, accidentally stubbed his toe in a hole in the aisle carpet of that car and hurt himself, would he have leave and license to smash that glass on the invitation extended by the general language of the legend?  Would not the accident giving that right connect itself with the necessary need and use of a hammer, a saw or an ax?

It would be a wide and very mischievous departure from correct canons of interpretation to disconnect general language from the issues and facts of a given case and to apply that general language mechanically or automatically to the different facts and different issues of another case; for the sense must be limited according as the subject requires, and words take color from their context.  In the House of Lords in Quinn v. Leathem (Appeal Cases 1901, l. c. 506) the Earl of HALSBURY, Lord Chancellor, said: Now, before discussing the case of Allen v. Flood and what was decided therein, there are two observations of a

general character which I wish to make, and one is to repeat what I have very often said before, that every judgment must be read as applicable to the particular facts proved, or assumed to be proved, since the generality of the expressions which may be found there are not intended to be expositions of the whole law, but governed and qualified by the particular facts of the case in which such expressions are found. The other is that the case is only authority for what it actually decides. I entirely deny that it can be quoted for a proposition which may seem to follow logically from it."

Vattel's 18th rule of interpretation reads: "The connection and train of the discourse, is another source of interpretation. We ought to consider the discourse together, and in order perfectly to conceive of the sense of it, and to give to each expression not so much signification as it may receive in itself alone, as that it ought to have from the thread and spirit of the discourse." [Potter's Dwarris on Stat. and Con., 128.]

The doctrine of a standard treatise (2 Lewis's Suth. Stat. Const. (2 Ed.), sec. 486) runs agreeably to the dictum of Lord Chancellor HALSBURY, viz.: "The maxim of *stare decisis* applies only to decisions on points arising and decided in causes; it has been held not to extend to reasoning, illustrations and references in opinions. The precedent includes the conclusion only upon questions which the case contained, and which were decided." That exposition has been adopted as satisfactory by this court. [Koerner v. St. Louis Car Company, 209 Mo. 1. c. 156.]

In a closely reasoned case, Lucas v. Commissioners, 44 Ind. 1. c. 541, DOWNEY, C. J., uses language often approved; to-wit: "It may be well to state . . . that the language used in an opinion is always to be restricted to the case before the court, and the decision is only authority to that extent. The reasoning, illustrations and references contained in the opinion

of the court are not authority, not precedent, but only the points arising in the particular case and which are decided by the court. The members of a court often agree in a decision, but differ decidedly as to the reasons or principles by which their minds have been led to a common conclusion. It is therefore the conclusion only, and not the process by which it has been reached, which is the decision of the court, and which has the force of precedent in other cases. The reasoning adopted, the analogies and illustrations presented in real or supposed cases, in an opinion, may be used as argument in other cases, but not as authority. In these the whole court may concur, or they may not. So of the principle concurred in, and laid down as governing the point in judgment, so far it goes or seems to go beyond the case under consideration. If this were not so, the writer of the opinion would be under the necessity in each case, though his mind is concentrated on the case in hand, and the principles announced directed to that, to protract and uselessly encumber his opinion with all the restrictions, exceptions, limitations and qualifications which every variety of facts and change of phase in causes might render necessary.''

There is general language in State ex rel. v. City of St. Louis, supra, somewhat urgently calling for the use of the foregoing rules for sifting and applying decisions. That general language is quoted and relied on by defendants in the instant case. Such use of that general language makes pertinent the foregoing discussion and justifies the remark that it is in the light of those rules, and not otherwise, we must determine what that case actually does decide.

To the above, and giving further point to the observations just made, we add that the law department of the city of St. Louis construed the decision in hand as cutting away the Act of 1907 root and branch. The city, following the enabling vote referred to, had levied

a one-fifth mill tax, collected a large sum and put it in an "art museum fund." When that decision went down the city made no further annual levy of said one-fifth mill tax, and, for aught appearing here, it now has such fund intact in its money chest. Not only so but a committee selected for learning in the law, revising the statutes in 1909, and empowered in that behalf to omit those declared by this court unconstitutional, omitted the Act of 1907 from Revised Statutes 1909, thereby joining the law department of the city in construing our decision as fatal to the enactment from end to end.

(b)    To aid in getting an understanding of the points ruled in the decision invoked by defendants, a summary of the Act of 1907 will be helpful. Thus: Its title hereinbefore set forth we shall recur to presently. The Act is in ten sections—the tenth, of some significance, declares an emergency because of "the fact that many cities and towns in this State have no art museum established therein."

Section 1 enables a city of a given population (including St. Louis) on petition to take a vote on the question whether a one-fifth mill tax for an art museum shall or shall not be levied. Its mandate is that, on such enabling vote, the tax shall be levied and collected in like manner as other general city taxes— the proceeds to be segregated and known as "the art museum fund"—its continued levy, however, is subject to recall at a subsequent election and on such recall the tax ceases. The tax rate of the city is to be so fixed that, including the art museum tax, constitutional taxing limitations shall be observed.

Section 2 prescribes, by way of definition, what the art meseum shall be in subserving a beneficial end to the public. It is to be an institution to collect and exhibit pictures, statuary and other works of art, or whatever else may be of artistic interest or appro-

priate for exhibition in such museum ''for instruction in art, and in general, for the promotion by all proper means of aesthetic or artistic education.'' It next prescribes certain administrative requirements.

Section 3 we reproduce entire, since its clause (in the nature of a proviso) beginning with the phrase ''unless and except,'' is said to contain the poison causing the whole enactment to perish. It reads:

''When in any city it shall have been decided by vote in the manner provided in section 1 of this act that a tax shall be levied for an art museum, the mayor of such city shall, with the approval of the legislative branch of the municipal government, proceed to appoint an administrative board of nine members to control the expenditure of the art museum fund, *unless and except* there shall be at the time already constituted and in existence, operation and authority, an administrative board endowed by city ordinance or other legal authority with power to occupy or administer public property devoted by law to the uses of an art museum located in a public park or upon public property by virtue of municipal authority; and if there shall be such a board, such board and its successors shall be the board of control for the art museum fund under this act for all the purposes and possessing all the powers and charged with all the duties provided for such board in this act.''

Section 4 provides for the term of office of the administrative board to be appointed by the mayor, and gives directions for filling vacancies, for removal from office, etc.

Section 5 empowers said board to make certain by-laws and donates other powers.

Section 6 directs that any museum so established shall be forever free to the use of the inhabitants of the city ''so long as the art museum tax shall continue to be operative therein,'' subject to reasonable rules and regulations by the board.

Section 7 relates to certain duties of the board.

Section 8 authorizes the city legislature to enact ordinances imposing penalties to punish those injuring the museum, its contents or grounds.

Section 9 provides that well disposed persons may make loans or donations of art objects, etc., to the art museum by deed, gift, devise or bequest to be held in trust, etc.

With the provisions of the Act of 1907 in mind, let us look to the decision in State ex rel. v. St. Louis, upon which defendants lean as a staff. In that case the board of control of the St. Louis School and Museum of Fine Arts came here for a writ of mandamus to compel the city of St. Louis to turn over $85,000, then in the city treasury as the proceeds of the one-fifth mill tax theretofore levied and gathered in for an art museum, and to go on and make continued tax levies to go the same way. Relators contended their board was the legal receptable into which those taxes must be emptied and that they were entitled to that relief because they came directly within the purview, meaning and requirements of the "unless and except" clause or proviso of sections 3 of the Act of 1907—that they filled the bill of that proviso and were an administrative board (to use the verbiage of the act) already constituted and in existence, operation and authority, endowed by a certain city ordinance and by the act itself with power to occupy or administer public property devoted by law to the uses of an art museum located in a public park or upon public property by virtue of municipal authority. The issues raised by that claim were the only issues that could be properly threshed out and determined in that case. We ruled that the board was not entitled to the fund or to compel such tax levies and, in doing so, ruled the proviso unconstitutional. In leading up to those rulings the opinion gives the origin and history of the St. Louis School and Museum of Fine Arts,

considers a certain ordinance 19969, of the city authorizing its board of control to erect in a public park of the city a building to be devoted to art education, and considers the meaning of the proviso in connection with the claim of relators in that suit.

A proposition decided in that case was that the board of control of the St. Louis School and Museum of Fine Arts was not in fact and could not become (giving heed to trusts involved) a public municipal institution, but was a mere department or administrative agency of Washington University, a corporation chartered by the State many years ago. In other words that neither under the ordinance of the city refered to, nor by the ordinances and resolutions of Washington University shown to exist, nor by the Act of 1807, nor by the instruments, agreements and authorized powers by which Washington University took over and controlled the St. Louis School and Museum of Fine Arts, did that school and museum or its board of control become, nor could either or both of them ever become an entity separate and distinct from Washington University. It was further held that the board of control of that school and museum was not and could not become a public official body of the city of St. Louis amenable to municipal government. On such premises it was ruled, further, that such board of control could not, under pointed-out provisions of our Constitution, be entitled to a donation of taxes levied and collected for public purposes, and to compel the levy of such taxes.

It was ruled further that relators, not being a legal entity or corporate body, but only an agency and department of Washington University administering the trust created by Mr. Crow, had no legal capacity to sue as such board.

Unquestionably it was decided, as said, that the proviso of section 3, looking to turning over the tax to

the board of control of the St. Louis School and Museum of Fine Arts, was unconstitutional. Although that case was decided by a divided court we stand by the ruling so made. Nor do relators in the present case ask us to change that ruling. They agree that we ought not to be blown about by every wind of doctrine on that score.

It may be conceded there is now and then some language used in the opinion (somewhat *arguendo* we think) that is subject to the construction that the Act of 1907 was passed for the very purpose of the proviso. If that be so, then to that extent the infirmity and vice of the proviso permeate the whole law. But the constitutionality of the whole act was not involved in the issues raised and decided, *ergo,* under the rules for interpreting and applying decisions announced in paragraph "a," that language ought not to be held as a decision that the entire act was void so as to make the maxim *stare decisis* apply. Such question is an issue in this case, but, as said, not in that. To such situation the rule of Lord Bacon applies, viz.: A court has nothing to do with what is not before it (*nihil habeat forum, etc.*) The general language on which the idea seems to be predicated that the whole act was declared void appears to have been casual, argumentative and by way of a side step into *obiter*. It does not arise to the dignity of a solemn holding on full consideration that the act was bad throughout. We find the following language at the close of that opinion, which either has no place there at all or bears out the view by way of a surmise, a hypothesis (or a benediction), that there may be virtue left in the law—a virtue to be tested out in a proper case by right parties in the interest of the public, viz.: "It may be that the city of St. Louis by its municipal assembly may provide a museum in its public parks which shall be under control and direction of the municipal authority of said city and that a portion of the revenue of the city may be

devoted to building it up.'' That language does not indicate that the court was precluding a future contention that the entire act was not void.

The conclusion announced brings us to the final question, to-wit: The proviso being void, does the whole act fall? To that question we pass.

II. We shall not undertake to re-examine or re-formulate the learning on the question. The books are full of it and counsel on both sides cite cases decided by this court, and text-writers, showing under what circumstances an unconstitutional and therefore dead provision may be pruned from the main stem of a law without impairing the stem itself. The prying mind can consult the reporter's head notes for them. There is a very late case, State ex rel. v. Gordon, 236 Mo. l. c. 170, *et seq.*, where the matter was in judgment and the right doctrine is announced. Briefly, the touchstone whereby a correct conclusion is to be reached will be found in correct answers to these questions: Is the entire law built up around the unconstitutional proviso? Are all the provisions of the enactment inseparable, and so interwoven and connected as to be interdependent? Does the statute attempt to accomplish instead of two objects (one valid, the other invalid) only, one object and that one invalid? Does the proviso furnish the inducement, the consideration, the legislative motive for the whole act? Is it apparent that but for the proviso the Forty-fourth General Assembly would not have enacted the law? With the proviso cut away is there left only an incomplete enactment, one not symmetrically rounded out and, therefore, incapable of enforcement? If those questions must be judicially answered, yes, then the whole act falls to the ground with the proviso—if, no, then the law, bad in part, may be good in part; for the courts in this behalf do not apply the ideas shadowed forth in the metaphors of Paul and Solomon where the one speaks

of a little leaven that leaveneth the whole lump, and the other comments on the all-pervading and unsavory effect of dead flies in the apothecary's ointment.

We are cited to a case (Skagi County v. Stiles, 10 Wash. 388) holding that where a part of the law is bad the presumption is generally that the whole is bad. Such a presumption I think of doubtful existence and of little value if existing at all. To the contrary we approach the constitutionality of a law with a strong, even a violent, presumption it is valid. Its invalidity must be made to appear beyond a reasonable doubt and every allowable art, part and act of judicial power should be exercised in so interpreting the law, if possible in reason, that none of it perish by construction. But if that be impossible and some of it, through inherent vice, must perish, do not the separable and independent parts of the law still stand protected by the presumption of validity attending the whole law at the outset? Why not? To a little alter and use a simile of Lord HOBART (Malever v. Redshaw, 1 Mod. 35), which I have had occasion to use before in another form, a judge is not to be like a tyrant, making all void when part is void, but like a nursing father, making void only that part where the fault is and preserving the rest if he can.

We are all of one accord in the opinion that the proviso being cut away as unconstitutional, there was left remaining a perfect, constitutional law capable of enforcement; that the proviso did not furnish the whole legislative inducement and consideration for the law; that there is no apparent reason why the Legislature would not have passed the law without the invalid proviso; that there is a main purpose running like a marking thread through the warp and woof of the law and a perfect plan outlined to effectuate that purpose, independent of the proviso; that the proviso is in its nature ancillary, a mere incidental or possible means of effectuating the main purpose of the law,

if, and only if, conditions were found to exist bringing the incidental or ancillary scheme into play; that the enactment may be likened unto a channel in which water runs, the proviso likened unto a canal tapping that channel and taking that water, whereby if the sluice gate be lowered and the canal be dammed at its head, the water naturally takes the main channel again.

As said by Grotius, the more noble, useful or necessary the matter of one provision is than that of another, the greater weight ought that provision to have with us.

Here the single motive or purpose of the enactment appears first blazoned forth in the legislative inscription or title over the law. Whatever the rule in England, in Missouri the title of a law is of significance in getting at its intendment. [Sedalia ex rel. v. Smith, 206 Mo. l. c. 361, et seq.] The title to the Act of 1907 shows that the legislative purpose was to enable cities of a certain class to establish, maintain, extend and regulate museums of art and employ their taxing power to that end—a worthy and permissible municipal end whether the educational efforts be directed to advance the "fine arts" so called, or "decorative art" or both. Turning to the emergency clause it shows that the Legislature was impressed with the fact that cities of this State had, at the time in hand, no free public art museums. Turning to the body of the act there is abundant internal evidence that its broad and main purpose, uninterrupted from head to foot, was to supply that deficiency, and that there is a perfect administrative working scheme provided, as said, to that end. True it is, that scheme or administrative plan is tentatively (and only tentatively) halted or diverted at one point on one contingency, viz.: the contingency evidenced by the "unless and except" proviso in section 3—a contingency that never happened and never can happen. Why then (the premises considered and keeping in mind the pur-

pose of the law), if the proviso be taken away, as here, should not that purpose and main scheme to carry it out remain intact and operative for the public good?

Speaking further to that proviso, we are of opinion that when the whole act is construed together, it shows that the Legislature had in mind that there might exist a present administrative board, endowed in a certain way with powers of a certain kind, that might be borrowed to carry out the purpose of the law and its administrative scheme, and, to that end, have and hold the powers and perform the duties prescribed for the other statutory board, to-wit, an administrative board of nine members to be appointed by the mayor and confirmed by the legislative branch of the municipal government. As the force of the decision in Board of Control of the St. Louis School and Museum of Fine Arts v. St. Louis was directed to and spent in ruling that relators in that case (a self-perpetuating body) were not such administrative board as could validly take over those powers, or become the donee of public money and perform the function of public municipal officers, entrusted with public property, and that the proviso was a dead letter, it results, as said, that the principal provisions of the act, outlining another administrative scheme, at once come into active play and resume their full operative force, as soon as the ancillary or incidental means of effectuating the purpose of the law were struck down and out of the way; for we are not by speculative refinements, in getting at and enforcing the intendment of the lawmaker, to hold his intendment vicious, or his law as amounting to nothing at all, unless we are pricked on and goaded thereto by imperative reasons—reasons we cannot find in the case at bar. It was a long time ago tartly and shrewdly said by a very great Judge, by way of *reductio ad absurdum* may be, in a kindred matter, that "the court, in its anxiety to find out the meaning of testator, has found that what he said has the

250 SUPREME COURT OF MISSOURI,

same meaning as if he had said nothing at all."
[Wright v. Atkyns, 1 Turn. and Russ. 143, l. c. 156.]
We should not unnecessarily get into such a pickle in
interpreting either a law or a will.

So, the proviso may be likened in its nature to a
*permission,* the rest of the law showing what is *pre-scribed.* In such case, the rule is: Where what is
only permitted is found incompatible with what is
prescribed, the latter has the advantage. [Vattel's
36th rule.]

Let a final writ go. It is so ordered. All concur.