## THE STATE ex rel. OWEN H. McNULTY v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals, and KANSAS CITY.

### In Banc, April 7, 1919.

1. **CERTIORARI: Facts of Case.** In determining upon *certiorari* whether a decision of a court of appeals is in conflict with its own last previous rulings, the Supreme Court cannot go beyond the opinion of the Court of Appeals to ascertain the facts, and will not therefore go to the record before that court to ascertain whether or not its statement of the facts is in accord with the record in the case.

2. ――――: ――――: **As Set Forth in Motion.** A motion for a rehearing filed in the Court of Appeals does not prove itself, and therefore the Supreme Court cannot on *certiorari* accept as true the facts stated in such motion.

3. ――――: **Conclusion of Law From Facts.** The Supreme Court will on *certiorari* determine whether the facts stated in the opinion of the Court of Appeals justify the conclusion reached and whether in view of those facts the conclusion conflicts with its own prior decisions.

4. ――――: ――――: **Weight of Evidence.** If the opinion of the Court of Appeals holds that as a matter of law the record in the case showed plaintiff's conduct was done in pursuance to a certain agreement, and there is nothing in the facts stated to invalidate the holding, the Supreme Court will not rule that the opinion conflicts with its decisions holding that an appellate court in an action at law is not authorized to pass on the weight of the evidence.

5. ――――: **Conflict in Decision.** If the question has not been decided by the Supreme Court in a manner contrary to the ruling of the Court of Appeals, whether that ruling be right or wrong, it cannot be quashed on *certiorari*.

6. **ESTOPPEL: Acceptance of Salary in Lieu of Legal Fees: Recovery.** The case of Wood v. Kansas City, 162 Mo. 303, gives recognition to the idea that a contract, under which a notary public in the

city treasurer's office accepts a salary in lieu of uncertain notarial fees and agrees that these may be paid to the city, might constitute a valid agreement, or might amount to a waiver or estoppel against the notary in a subsequent suit brought by him to recover the fees, although by ordinance he was to receive the fees in payment for his services; and whether the ruling was right or wrong, if it is the last decision of the Supreme Court on the subject, an opinion of the Court of Appeals which follows it will not be quashed on *certiorari.* Neither can it be quashed as in conflict with State v. Williamson, 118 Mo. 156, on the theory that an assignment of unearned salary is void, as against public policy, for in that case the contract was executory, whereas in the case at bar the plaintiff had during his entire clerkship received from the city the agreed salary in lieu of the fees which the ordinance said were to be paid to him, and the Wood Case had in effect held that an executed contract might operate as an estoppel.

*Certiorari.*

WRIT QUASHED.

*Numa F. Heitman* for relator.

(1) The Court of Appeals exceeded its jurisdiction in setting aside the general finding of all the facts in issue in favor of McNulty, which was made by the lower court. Said finding of the lower court was based on substantial evidence and no declarations of law were asked, given or refused. In re Lankford's Estate, 197 S. W. 147. (2) In said last previous ruling of this court this court holds that said finding of the lower court is incontrovertible on appeal. In not following. said rule the Court of Appeals exceeded its jurisdiction. In order to determine this jurisdictional question this court will examine the motion for rehearing and the Bill of Exceptions, which is a part of the record, to determine whether or not the finding of the lower court was based on substantial evidence. 6 Cyc. 827; 3 Am. & Eng. Ency. Law, pp. 61, 62; State v. Ellison, 186 S. W. 1075; State v. Ellison, 176 S. W. 11; State ex rel. Tiffany v. Ellison, 266 Mo. 604. (3) Relator points out the evidence which supports the finding of the lower court, and which proves by the record that many of the recitations contained in the opinion complained of are absolutely without any support in the record, and many other statements are

flatly contradictory of positive evidence on which the lower court based its verdict, thus exceeding the court's jurisdiction in another respect, to-wit, the credibility of the witnesses was for the lower court, and in another respect, to-wit, that the appellate court must not draw inferences to overcome the finding of the lower court where such finding is based on substantial evidence. The motion for rehearing points out that the Court of Appeals exceeded its jurisdiction in all these and many other respects which are made clear in the motion for rehearing, to which especial attention is urged. (4) Both of said motions are made a part of relator's application and printed record herein. The Court of Appeals has returned to this court the pleadings, the bill of exceptions, record and the entire record is now before this court, and this court will certainly examine the entire record to see wherein the Court of Appeals has exceeded its jurisdiction. (5) Relator also asks the court to consider the "Statement and Brief for Respondent" filed by him, first in this court, and afterwards in the Court of Appeals, because it shows clearly wherein the Court of Appeals exceeded its jurisdiction. The opinion complained of ought to be quashed because on its face, and for the purposes of this point, conceding the facts to be as stated by said opinion, said opinion completely overlooks the previous rulings of this court holding that it is contrary to public policy to permit any officer of the State to assign his unearned fees or salary. All executory contracts to sell official fees or salary are void because public policy demands that every official shall obtain his fees or salary at the time and in the manner prescribed by law. State v. Williamson, 118 Mo. 146; Beal v. McVicker, 8 Mo. App. 202. (6) What the law will not permit him to make an express contract to do, it will not permit him to do by way of waiver. This important public policy cannot be broken down by the law of waiver. Certainly if the law will not let McNulty make an express contract to sell or assign his unearned notary fees, it will not imply a contract on his part to

violate the public policy which forbids the selling of unearned official fees; that public policy cannot be broken down by waiver, estoppel or by an express or by an implied contract. Sprague v. Rooney, 104 Mo. 356. (7) An *obiter dictum,* of the Wood case, does seem to sanction the idea that the notary public could waive or sell his unearned notary fees, but petitioner contends that said language must be regarded as *obiter dictum* because the question in case was largely a question of evidence. It is only the actual decision in the Wood case that is binding on the Court of Appeals, or even on this court. In holding and acting to the contrary, the Court of Appeals went squarely contrary to this court's opinion in State ex rel. v. St. Louis, 241 Mo. 231, which says that the authority of every decision is limited to the facts of that decision. Applying said rule to this case it is apparent that McNulty was cast in the Court of Appeals, because said court followed *obiter dictum* instead of the actual decisions in the Wood case. In doing so said court destroyed a judgment which was absolutely just and also violated the following decisions: State v. Williamson, 118 Mo. 146; Wood v. Kansas City, 162 Mo. 303; Sprague v. Rooney, 104 Mo. 358-60; Shohoney v. Railway, 231 Mo. 156; Hayden v. Little, 35 Mo. 418; St. Louis v. Carmody, 151 Mo. 566; Ullman v. St. Louis Fair Assn., 167 Mo. 273; Jordan v. Davis, 172 Mo. 599; Baumhoff v. Railway, 171 Mo. 120; Easley v. Elliott, 43 Mo. 289; Wilson v. Railway, 46 Mo. 36; Mullins v. Kansas City, 188 S. W. 193; Ehrlich v. Insurance Co., 88 Mo. 249; Noonan v. Insurance Co., 21 Mo. 89; Bales v. Perry, 51 Mo. 449; De Lashmutt v. Teetor, 261 Mo. 441; Haseltine v. Ausherman, 87 Mo. 410; Thompson v. Lindsay, 242 Mo. 53, 76; Roselle v. Beckemeir, 134 Mo. 380; Roselle v. Bank, 141 Mo. 36; Hobbs v. Boatwright, 195 Mo. 693; Black v. Neal, 112 Mo. 169; Kitchen v. Greenabaum, 61 Mo. 110; Karnes v. Insurance Co., 144 Mo. 413; Richardson v. Railway, 149 Mo. 311; Porter v. Jones, 52 Mo. 399.

. *E. M. Harber, A. F. Smith* and *Benjamin M. Powers* for respondent.

(1)   The decision of the Kansas City Court of Appeals is not in conflict with any decision of this court. In Wood v. Kansas City, 142 Mo. 303, this court held that the ordinance was in direct conflict with the statute which fixed the fees of a notary public, and that the ordinance was therefore invalid.   In this McNulty case the city passed no invalid ordinance forbidding McNulty te recieve his notary fees, but those fees were voluntarily waived by McNulty.   A question with reference to the right of a notary public to voluntarily waive his fees was. passed on by this court in the case of Leach v. Hannibal, etc. Co., 86 Mo. 27.   It was held in; the Leach case that a notary public could waive his fees. This court in the Wood case did not overrule the Leach case.   (2)  'In State v. Williamson, 118 Mo. 146, the question presented is entirely different from the question presented here.   If, however, there were anything in the Williamson case that is contrary to the holding of this court in the Leach case the Court of Appeals was justified in believing that such contrary ruling is overruled by the action of this court in the Wood case affirming its original holding in the Leach case.   (3) This court has held in a number of cases that where an officer has accepted compensation in an amount different from that fixed by law, he has waived any right to assert any further claim under the law.   See decisions cited in opinion of the Court of Appeals in this case. (4)   We believe that if the question presented in this case had been presented to this court as an original proposition it would have reached the same conclusion that was reached by the Kansas City Court of Appeals. But the question presented in this case has not come directly under the consideration of this court.   The facts in this case are very different from the facts in the Woods case.   They resemble more closely the facts in the Leach case.   And this court, in a/ *certiorari* proceed-

ing does not quash the judgment of the court of appeals even though it might entertain a different view of the law from that entertained by the Court of Appeals, if it has not already passed upon the question at issue. State ex rel. Heine Safety Boiler Co. v. Robertson, 188 S. W. 101.

BLAIR, J.—*Certiorari.* The writ brings before us the record in McNulty v. Kansas City, decided by the Kansas City Court of Appeals, 198 S. W. 185.

I. (a) Counsel contends that the statement of facts in the opinion of the Court of Appeals is out of accord with the record in that case, and urges that an examination of that record will establish this. In **Facts of Case.** State ex rel. v. Ellison, 273 Mo. 218, this court adopted the doctrine that it would "not go beyond the opinion to ascertain the facts." It thus appears that harmony of *written opinions,* not harmony of decisions, is the thing which this court holds was intended by the framers of the Constitution. As the writer of this has done, so must counsel in this case do—submit to the application of this rule as announced in the case cited.

(b) It is urged that we must accept the facts stated in the motion for rehearing as true, else there is no use for our requiring such motion to be filed before our writ will issue. Such a motion does **Motion for Rehearing.** not prove itself and can be proved only by the record. The record we do not examine, as pointed out, supra. The point must be ruled against relator.

II. Secondly, counsel contends the facts stated in the opinion of the Court of Appeals do not justify the conclusion reached and that the decision con- **Conclusion from Facts.** flicts with decisions of this court. This question requires that we set out the facts as stated by the Court of Appeals. They are as follows:

"When city taxes on real estate in Kansas City become delinquent, payment thereof is enforced by a

sale of each delinquent tract to a purchaser who pays to the city the unpaid tax, with interest, penalties and costs, and receives from the city treasurer a certificate of purchase acknowledged by him before one of the clerks in his office who holds a notary public's commission for this purpose. For this acknowledgment the sum of fifty cents is included in the amount paid to the city by the purchaser, that being the fee allowed by statute to a notary for taking and certifying to an acknowledgment. These delinquent sales, and the consequent execution of the certificate of purchase, cover a period of about two weeks in November or December of each year; and at the close of said sales many certificates are acknowledged.

"Plaintiff was a clerk in the treasurer's office from and including the year 1904 down to June, 1910, and was the notary before whom the treasurer acknowledged the certificates of purchase at the end of the two weeks 'of delinquent sales in each year, and also the tax deeds to such tracts as were never redeemed. On August 12, 1912, he brought this suit to recover from the city the sum of $2,850.50 as due him for acknowledgments taken, as above indicated, during the years 1908 and 1909. He recovered judgment in the trial court for the full amount sued for, and the city has appealed.

"It is admitted that the above sum represents the total amount of notary fees for such acknowledgments taken by plaintiff while in the treasurer's office during those two years, and that the same were collected by the treasurer and paid into the general fund of the city treasury. It is the contention of the city that plaintiff waived the right to receive payment of these fees and that he is now estopped from claiming them.

"In 1885 the Supreme Court of this State held, in Leach v. Hannibal & St. Joseph Ry. Co., 86 Mo. 27, 56 Am. Rep. 408, that a notary public in the service of a railway company could waive his right to compensation for notarial services; that having entered into a contract of service to the railway company for a fixed sala-

ry, he prima-facie agreed to give the latter his entire time, and the notarial work having been done in that time, then, in the absence of any 'agreement, or understanding, or line of conduct between the parties' showing that such employee was to receive the statutory fees for the notarial service rendered his employer in addition to his stipulated salary, he could not recover of his employer for such notarial service, and in the absence of any such showing he would be deemed to have waived the right to claim such fees.

"Following this rule thus laid down, the city, in February, 1892, passed an ordinance known as Ordinance No. 3910 which provided that one of the clerks in the treasurer's office should be a notary public; that the salary paid by the city to him as a clerk should be payment in full for all services rendered by him, including those of a notarial character, and that all fees paid for such notarial work should be turned into the city treasurer.

"Under this ordinance, in April, 1892, one Wood became a clerk in the treasurer's office and was the notary who took acknowledgments during his stay therein, which was until February, 1893. He sued for his fees, and in Wood v. Kansas City, 162 Mo. 303, the Supreme Court held the above-mentioned ordinance void, and that since it was void it was the same as if it had never existed, and Wood was not estopped from recovering his fees by reason of having accepted his salary for his services as clerk, for the reason that the ordinance was nothing, and he had done nothing to waive his fees or to create an estoppel. In the Wood case, 162 Mo. l. c. 310, the court says:

" 'It is not claimed that he entered into any express contract, aside from the ordinance, by which his fees as notary were to be received and retained by defendant, and the ordinance being void there was no express contract at all with respect thereto, hence nothing to estop plaintiff from claiming them by reason of said ordinance.'

278 Mo.—4

"And on page 311 the court, in distinguishing the Wood case from the Leach case, says that Leach may have 'entered into a contract, express or implied, by which, in consideration of his employment at a fixed salary, he was to have no fee for such services. And, after having thus rendered the services, he could not of course recover the fees allowed him by law therefor. In the case at bar [the Wood case] there was no such contract.'

"In other words, the Supreme Court held that in the Wood case there was no agreement or line of conduct on Wood's part by which he consented that he would allow the city to have the notary fees and accept in full of his services the fixed salary paid him, and hence he could not be denied his fees,, but was entitled to them in addition to his salary.

" (1) We are of the opinion that the case we are now called upon to decide differs in this respect from the Wood case. In the case at bar not only did plaintiff make an express agreement to waive his notary fees and accept a stipulated salary in full for all his services, including those of a notarial character, but he thereafter continued on in the service of the city without change of terms, and under circumstances that necessarily imply that he waived the right to the notarial fees and accepted in lieu thereof a certain fiixed monthly sum paid to him as salary in full of all his services, including those of a notarial character. If he did this, he is not entitled to now turn around after his relations with the city have terminated, and nearly three years after the notarial services were performed, demand the fees therefor in addition to the money he received from the city with the manifest intention on his part, and the understanding implied from the circumstances, that he was not charging for his notarial services, but was accepting his monthly stipend in full of all services. The facts, which we think manifest that agreement, intention and course of conduct on his part are as follows: It is conceded that the certificates of purchase for each year

were executed and acknowledged by the treasurer at one time, and the work of the notary in filling out and attesting the certificates or acknowledgments was done during his office hours as clerk in the treasurer's office. If in doing this at any time he had to work overtime he was paid for such overtime in accordance with the regular rates prescribed for overtime work as a clerk.

"After the decision in the Wood case the city, in 1901, repealed Ordinance No. 3910, hereinabove mentioned, which required the notary clerk to accept only his salary as clerk and directed the turning of the notary fees into the city treasury, and enacted an ordinance, No. 18581, which provided that the notary clerk in the treasurer's office should enter into a contract agreeing to accept as compensation for his services as clerk the sum of $5 per month and that he should receive, in addition thereto, the notarial fees accruing in said office. Under this ordinance the notary clerk in the treasurer's office got $5 per month and the notary fees. In this way such clerk's compensation, instead of running from $75 to $90 per month as the other clerks in the office, ran up to a very large sum, depending upon the number of tracts sold for delinquent taxes.

"In 1904, a certain city treasurer selected the plaintiff as 'a young man that he could trust' and who would 'keep his word with him' and 'do the square thing by him,' and made a private agreement with plaintiff to appoint and make him the notary clerk if he (plaintiff) would agree to accept the $5 per month paid by the city, and $60 per month paid by the treasurer out of his own pocket, and allow the notary fees to be kept by the treasurer. This 'gentleman's agreement' continued through 1904 and 1905, the plaintiff getting $5 per month from the city and $60 per month from the treasurer individually, and the treasurer getting the fund arising from the notary fees.

"In 1906, owing to some public complaint or discussion about advertising the delinquent lists in a paper of very limited circulation, the treasurer advertised

said list in one of the great dailies of the city, where every property owner had an opportunity to see their property was being advertised for taxes. The result was that a great rush was made by many to pay their delinquent taxes before their property was sold, and consequently there were few certificates of purchase to be acknowledged. The treasurer, in paying $60 per month to the plaintiff and keeping the notary fees, was losing money on his 'gentleman's agreement.' Hence he proposed to the plaintiff that thereafter he would pay the plaintiff $75 per month out of the city's funds and let the city keep the notary fees, and to this the plaintiff agreed. No ordinance was passed authorizing him to be paid more than $5 per month. So that during 1906 plaintiff received $75 per month from the city, $70 of which was wholly without authority or justification, except upon the theory that the plaintiff was allowing the city to keep the notary fees in return for which he was receiving the said monthly stipend regularly out of the funds of the city. No new terms or agreement were entered into by plaintiff. He continued on in the treasurer's office the same as from the first, the only difference being that whereas he first got $5 from the city and $60 from the treasurer and allowed the treasurer to keep the fees, now he got $75 from the city and allowed the city to keep the fees. Thus there was a voluntary agreement on the part of plaintiff to waive his fees and take in lieu thereof the money paid him by the treasurer, and this agreement was carried on into effect between plaintiff and the city, whereby it took the place of the treasurer in paying plaintiff's monthly salary and in retaining the fees for the notary work. So that, thus far, plaintiff is in a vastly different situation from that of Wood in his case. He is in the position of having voluntarily agreed to waive his notary fees and to accept in lieu thereof money for which he gave no equivalent whatever except the fees he waived. This waiver was first to the treasurer and afterwards to the city, and during 1906 he got from the city $70 per month

to which he was in no way entitled, and for which he gave no equivalent except the fees he allowed the city to take. And under that situation the city was giving him a sure thing as to the $70 and taking the chance on receiving enough fees to pay for or reimburse it for said amounts. Plaintiff did not ask and has not asked any one for those fees.

"In April, 1907, the city passed a general omnibus ordinance fixing the compensation of all officers and employees in the city service. This ordinance said nothing about a notary clerk in said treasurer's office, but did provide that five clerks therein should each receive $900 per year, and repealed all ordinances in conflict therewith. The effect of this ordinance was merely to authorize and validate the hitherto unauthorized payment of $70 each month to the plaintiff, and while it does not say it is pursuant to and in accordance with the arrangement theretofore existing between plaintiff and the city, yet there can be no question but that such was the case. Nothing was said by plaintiff to indicate that any other or different terms were required or expected. The plaintiff kept on in his clerkship as before, drawing $75 per month, and the city retained the notary fees, and no claim was made for them nor any intimation that the old arrangement was not continuing the same as it had been.

"In 1908 a new treasurer went into office, but the plaintiff continued on in his clerkship and the record discloses no change in the arrangement, nor any intimation that there would be any change whereby plaintiff would claim the fees. At the beginning of 1909 the city passed an ordinance the effect of which was to raise the salary of fourteen clerks in the treasurer's office to $90 a month each. Nothing was said therein about a notary in the office, nor as to what should be done about the fees, but under it plaintiff's salary was raised to $90 per month and he continued to receive it from then until in June, 1910, when he resigned. Still no change had been mentioned or intimated as to the

fees, and it is manifest no change was thought of or contemplated, and it is also manifest that the city would not have paid the $70 per month nor added an increase to that sum had there been a suggestion that plaintiff would afterwards demand, in addition to the salary of the clerkship, a sum which at the minimum was more than the amount he was getting. He continued as before to draw his salary and allow the fees to be retained by the city, in the same manner and under the same arrangement as had theretofore existed. His conduct throughout indicated that he had no intention of charging for the fees; the city had every right to believe that the old arrangement existed, and if plaintiff had any intention of claiming said fees he deliberately concealed it and made no move to disclose it for more than two years after he left the city's employ. It is true the fees were not due the city in the first place, but his notarial service was rendered the city treasurer, and while it was paid for the treasurer by the purchasers, and said fees originally were the plaintiff's as a perquisite to his office of notary, yet he voluntarily agreed to allow them to go first to the treasurer and afterwards to the city in return for the fixed and certain monthly sums received. And by this arrangement, expressly entered into at first and later continued without notice of any change, he obtained money from the city which it otherwise would not have paid him, and to which he had no claim whatever except upon the theory and understanding that the fees for the notarial service which he rendered during his time, which belonged to the city, should go to it. Under these circumstances we do not think plaintiff is entitled to recover.''

This is followed by a citation and discussion of authorities.

The decisions of this court with which this part of the decision are said to conflict are State v. Williamson, 118 Mo. 146; Mullins v. Kansas City, 188 S. W. 193; Sprague v. Rooney, 104 Mo. 356, 360; In re Lankford's Estate, 272 Mo. 1; State ex rel. v. St. Louis, 241

Mo. 231; Wood v. Kansas City, 162 Mo. 303; Parke, Davis & Co. v. Mullett, 245 Mo. l. c. 175, and numerous others of like character.

The opinion of the Court of Appeals shows that the court held as a matter of law that the record in the case before them showed that the notarial 'fees for which McNulty sued were turned into the city treasury under an agreement whereby McNulty was to accept a fixed salary of $75 to $90 per month and turn in the notarial fees; that the salary was paid to McNulty, and the notarial fees paid into the city treasury in accordance with this agreement.

(a)   There is nothing in the facts stated in the opinion to invalidate this holding.   Whether the record supports it is not a question we can examine in this kind of a proceeding, as pointed out in **Weight of Evidence.** Paragraph I hereof.   This disposes of the contention that the opinion conflicts with cases holding that an appellate court in an action at law is not authorized to pass on the weight of the evidence.

(b)   In State v. Williamson, 118 Mo. 156, it was held that a contract for the "sale of unearned salary of defendant as a mail clerk in the United States post-office at Kansas City" was "absolutely null **Assignment of Unearned Salary.** and void, as being against public policy."   The court stated that the "reason of the rule is that the public service may not be so good and efficient when the unearned salary has been assigned as when it has not been  .  .  ."

In Wood v. Kansas City, 162 Mo. 303, the opinion was written by the same judge who wrote the opinion in State v. Williamson.   In the Wood case the action was **Estoppel.** brought to recover notarial fees arising from the same sort of notarial work as those in this case.   Wood was a clerk in the office of the treasurer of Kansas City.   By ordinance he was *required* to turn the notarial fees into the city treasury and accept a fixed salary.   It was held the ordinance was void and he might recover the fees.   In that case it was pointed out

that Wood had entered into no contract whereby the city was to pay a fixed salary and take whatever notarial fees he might earn in taking acknowledgments of sale certificates. This was one of the grounds upon which the court in the Wood case distinguished the case of Leach v. Railway, 86 Mo. 27. It is suggested this part of the opinion is *obiter dictum*. It seems to us to be a part of the actual decision. The holding was made in distinguishing a case on the authority of which one of the parties was insisting upon a result different from that reached in the opinion.

The Wood case, therefore, gives recognition to the idea that a contract whereunder a notary accepts a fixed salary in lieu of uncertain notarial fees and agrees these may be paid to another, might constitute a valid agreement, or might amount to a waiver or estoppel against the notary in case he later attempted to recover the fees. It is not necessary for us to attempt to determine whether this ruling is right or wrong. At the most it left the question open and we have found no other decision which countervails it in a case presenting the question as it was presented to the Court of Appeals in this case.

Relator earnestly contends that a rule permitting waiver in circumstances like those in this case (and the Wood case) conflicts with the principle laid down in State v. Williamson and like cases. In that case the contract had not been executed, and Williamson was indicted on the theory that he had collected salary belonging to his assignee and was guilty of embezzlement. It was not unlike cases in which an effort is made to enforce executory contracts for assignments of unearned official salary. In this case the relator had accepted the salary he procured by agreement to turn notarial fees into the city treasury in consideration thereof (so the Court of Appeals held) and now seeks to recover the fees the city took under that agreement. Whether his carrying out such an agreement and accepting the salary constitutes such a waiver as to preclude

his recovery of the notarial fees from the city, even though it be conceded the agreement was originally void as against public policy, is a question this court has not passed upon except in the Wood case, and, in that case, the holding is certainly not out of accord with the holding of the Court of Appeals in the case at bar. The question not having been decided by this court in a manner contrary to the ruling of the Court of Appeals, the record cannot be quashed on the ground of conflict on this question.    There is authority elsewhere tending to support the view of the law taken by the Court of Appeals.    The writ is quashed.    All concur except *Woodson, J.*, who dissents; *Bond, C. J.*, concurs for conformity to existing rule.