MYRTLE L. WALKER, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted January 5, 1916. Opinion Filed February 8, 1916.

1. RAILROADS: Death of Conductor: Collision with Backing Engine: Sufficiency of Petition. In an action for the death of a freight train conductor who, while walking on a switch track, engaged in checking the cars of his train, was struck and

killed by an engine of another train which was running backwards, the petition, by alleging that the operatives of the engine could have seen decedent on the track, was not defective, as necessarily showing that decedent could have seen the approaching engine and was, therefore, guilty of contributory negligence in failing to see it and thereafter get out of its way, since the question as to that matter is, did decedent see, not could he see, the approaching danger and was he warned of it?

2. ———: Injury to Employee: Collision with Train: Duty of Operatives. Where the operatives of a railroad engine have no right to expect a clear track, but, on the contrary, by reason of the constant use of the place by a large number of fellow employees and outsiders, might expect employees or outsiders to be there, it is their duty to keep a lookout and to give a warning signal, while the engine is moving; distinguishing Degonia v. R. R., 234 Mo. 564 and cases following it.

3. MASTER AND SERVANT: Injury to Servant: Usages and Customs. A settled custom or usage which had been followed prior to a servant's injury, with the sanction of the master, was, in effect, a rule which the servant was entitled to have observed for his protection, and the violation of it was as much a tort as if it had been printed and published.

4. RAILROADS: Warning Signals: Rules. A rule of a railroad company, prohibiting the unnecessary use of either the bell or the whistle on locomotive engines, was not intended to inhibit the use of warning signals, by bell or whistle, in a place of danger; and, if it was intended to have such meaning, it would be unreasonable.

5. ———: Death of Conductor: Collision with Backing Engine: Negligence of Operatives. In an action for the death of a freight train conductor who, while walking on a switch track, engaged in checking the cars of his train, was struck and killed by an engine of another train which was running backwards, it was shown that the railroad yards at that point were being constantly traversed and crossed by employees of defendant and outsiders; that, before striking decedent, the backing engine drifted along, without making any noise; that notwithstanding the engineer, before starting the engine, had seen decedent walking along the track in the direction in which the engine was subsequently run, neither he nor the fireman kept any lookout to see that decedent was not walking on the track, nor gave any signals to warn decedent of the movement of the engine; and that there was no noise which would have prevented decedent from hearing such a signal, if it had been given. *Held*, that the evidence was sufficient to warrant

a finding that defendant was negligent, on the theory that the operatives of the engine should have given warning signals as the engine ran through the yards, which were frequented by a multitude of employees, and where, therefore, they had no right to expect a clear track, and also on the theory that they failed to keep a proper lookout to see that decedent was not walking on the track.

6. ————: ————: ————: **Last Chance Doctrine: Instructions.** In an action for the death of a freight train conductor who, while walking on a switch track, engaged in checking the cars of his train, was struck and killed by an engine of another train which was running backwards, evidence *held* sufficient to warrant a finding that the operatives of the engine saw decedent in a position of peril in time to have avoided injuring him by stopping the engine, so that it was not error to insert in instructions requested by defendant, to the effect that if decedent went on the track in front of the approaching train, without looking or listening, there could be no recovery, and that the operatives of the engine were under no duty to notify decedent of its approach, unless they saw him in a position of imminent peril and about to be struck, a proviso that they should not so find for defendant, if they further believed from the evidence that the operatives of the engine saw, or by the exercise of ordinary care could have seen, decedent in a position of peril in time to have avoided injuring him by stopping the engine.

7. **INSTRUCTIONS: Necessity of Conforming to Evidence.** An instruction which is contrary to substantial evidence should not be given.

8. **APPELLATE PRACTICE: Invited Error: Instructions.** An appellant is estopped to claim reversible error resulting from the inconsistency of instructions, where the inconsistency results from an erroneous instruction given at his request.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

Affirmed.

*James L. Minnis* and *David H. Robertson* for appellant.

(1) The petition does not state a cause of action, and the court erred in overruling defendant's objection to the introduction of any evidence. (a) As the

petition charges that the operatives of the engine could have seen the decedent on the track, it necessarily follows from such alleged fact that the decedent, by looking could have seen the engine; therefore, in failing to see the engine, and allowing himself to be struck thereby, decedent was guilty of contributory negligence, which is a bar to recovery, notwithstanding there was a failure to sound the bell and whistle, and that such failure may have been negligence.  Carrier v. Railroad, 175 Mo. 470, 482; Dyrcz v. Railroad, 238 Mo. 33; Burge v. Railroad, 244 Mo. 76; Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Degonia v. Railroad, 224 Mo. 564; Sissel v. Railroad, 214 Mo. 515; Evans v. Railroad, 178 Mo. 517; Clancy v. Railroad, 192 Mo. 657; Cahill v. Railroad, 205 Mo. 393; Aerkfetz v. Humphries, 145 U. S. 419.    (b) Therefore, unless the petition states a cause of action for recovery under the humanitarian doctrine, there can be no recovery.  But the petition further charges that the decedent was not actually seen, but that he could have been seen by the use of ordinary care.  As the decedent was an employee in the switch yards there was no duty to keep a lookout for him, and the petition finally fails to state a cause of action.  Gabal v. Railroad, supra;  Rashall v. Railroad, supra;  Cahill v. Railroad, supra;  Nivert v. Railroad, 232 Mo. 639;  Degonia v. Railroad, supra;  Sissel v. Railroad, supra;  Clancy v. Railroad, supra;  Aerkfetz v. Railroad, supra.    (2)    The court erred in refusing to instruct a verdict for the defendant at the close of the plaintiff's evidence, and at the close of all the evidence.    (a) The petition charges, plaintiff admits, and the evidence shows that the decedent was not actually seen before the engine struck him.    Therefore there can be no recovery.    See authorities under point 1 (b), supra.    (b) There was no duty to keep a lookout for decedent, but nevertheless the decedent could not have been seen by

the operatives of the engine after he was in a place of imminent peril. The farthest that the decedent, who was in the center of the track, was from the engine was one hundred and fifty feet. The experiments made, actual measurement taken, the photographs and the drawings here attached, show that within that distance of the tender, the decedent could not have been seen by the operatives of the engine. The actual measurements must prevail over the opinions of witnesses, as to distance. Moore on Facts, sec. 397, 419, inclusive; McCreery v. Railroad, 221 Mo. 28-29; Markowitz v. Railroad, 186 Mo. 359; Jordan v. Transit Co., 202 Mo. 430; Kelsey v. Railroad, 129 Mo. 362. But even if decedent could have been seen that distance from the engine, he was then not in a place of peril, and the operatives of the engine would have had a right to presume that he would exercise ordinary care for his own safety and leave the track at such time as the engine began to approach him more closely. Carrier v. Railroad, 175 Mo. 483; Pope v. Railroad, 242 Mo. 240; Veatch v. Railroad, 135 Mo. App. 232, 240; Schupp v. Railroad, 166 Mo. App. 602; Elliott on Railroads, sec. 1153; Davies v. Railroad, 159 Mo. 1; Reno v. Railroad, 180 Mo. 489; Witham v. Railroad, 171 S. W. 992; Sites v. Knott, 197 Mo. 712.

*Fry & Rodgers* and *Fauntleroy, Cullen & Hay* for respondent.

(1) The evidence in this case shows that the switch yards of defendant, including the track upon which Walker was run over and killed, were, by reason of the great number of defendant's employees, trainmen, shopmen and others being in and over same, a beehive of human industry. This being true, it was the duty of defendant's servants in charge of the engine to keep a lookout in the direction the engine was moving for persons on and near the track. Schlereth

v. Railroad, 115 Mo. 102; Hardwick v. Railroad, 181 Mo. App. 176; Sullivan v. Railroad, 97 Mo. 113; Henzeman v. Railroad, 199 Mo. 57; Cahill v. Railroad, 205 Mo. 405. (2) The court committed no error in permitting plaintiff to introduce oral evidence showing it was the rule, custom and practice for those in charge of an engine in the yards at Moberly to give a signal before moving an engine, and to keep the bell ringing while the engine was in motion and keep a lookout in the direction the engine was going. Lewis v. Railroad, 142 Mo. App. 597; Rutledge v. Railroad, 123 Mo. 134; 1 Labatt, Master & Servant, sec. 213-a; 36 Cyc. 1156. (3) The evidence shows that it was the rule, custom and practice in the yards at Moberly to keep the bell ringing on a moving engine, and maintain a lookout for employees on the track in the direction the engine was going. Hence, it was the duty of the agents in charge of the engine to keep a lookout for those who might be upon or dangerously close to the track; and if the agents, by the use of ordinary care and by observing the custom would have seen Walker in a place of peril and unaware thereof, then the defendant is liable to the same extent as if said agents had actually seen him. Schlereth v. Railroad, 115 Mo. 102; Hardwick v. Railroad, 181 Mo. App. 176. (4) Defendant cannot complain of the court's action in overruling its motions to strike out parts of the petition, and to its motion to elect between different allegations of the petition. Having pleaded over by answer the alleged point is waived. White v. Railroad, 202 Mo. 561-2; Springfield Eng. Co. v. Donovan, 147 Mo. 628; Bronnock v. Railroad, 200 Mo. 567; Bungenstock v. Railroad, 163 Mo. 219; Hilburn v. Ins. Co., 140 Mo. App. 362; Anderson v. Railroad, 129 Mo. App. 387. (5) Under the evidence in this case the jury was justified in concluding that Walker was actually seen in a position of peril by the men in charge of the engine in time to

have avoided running him down. The firemen testified it was his duty to keep a sharp lookout in the direction the engine was moving; Carr testified the fireman was looking down the track in the direction the engine was moving; the engineer testified he sat on the window sill of the cab and kept a vigilant watch in the direction the engine was going. Under the evidence the jury had the right to find that Walker was seen upon the track in a place of danger. Lynch v. Railroad, 208 Mo. 23. (6) Even if the petition was not as full as might have been in pleading the facts to bring it under the humanitarian rule, yet no motion having been made to make it more definite and specific in that respect, the defect is waived and the petition is good after the verdict. Stonemets v. Head, 248 Mo. 243; Howard v. Scott, 225 Mo. 710; Hurst v. City, 96 Mo. 168; Angel v. Portageville, 168 Mo. App. 22; Thomasson v. Ins. Co., 217 Mo. 495; Gardner v. Met. Street Ry., 223 Mo. 419; Sec. 2119, R. S. 1909, subdivisions 7 and 9; Brown Con. Co. v. Bambrick, 150 Mo. App. 511; Norman v. Sheip, 142 Mo. App. 143. (7) Even if the petition pleaded inconsistent acts of negligence, yet as the case was submitted to the jury on only one act of negligence, there was no error on that score. White v. Railroad, 202 Mo. 561. (8) Acts which are alleged to have been the cause of the injury, though the plaintiff himself was not negligent, may be alleged in same count with the humanitarian doctrine. Clark v. Railroad, 242 Mo. 570.

STATEMENT.—This is an action under section 5425, Revised Statutes 1909, by Myrtle L. Walker, widow of Charles W. Walker, to recover damages sustained by her in the death of her husband. That section is section 2864, Revised Statutes 1899, as amended by Act approved April 13, 1905 (Laws 1905, p. 135). The defendant, contesting the constitutionality of the Act

of April 13, 1905, in the circuit court, on judgment going against it, appealed to the Supreme Court. But pending the submission of the cause in the Supreme Court, that court having held the Act constitutional in Burge v. Wabash R. R. Co., 244 Mo. 76, 148 S. W. 925, defendant abandoned that contention, and the amount involved not being within the appellate jurisdiction of the Supreme Court, the cause was transferred to our court.

In the amended petition upon which the case was tried, it is averred that while Charles W. Walker was in the employ of defendant in its switch yard at Moberly in the capacity of a freight conductor, looking after the making up of one of defendant's freight trains, of which he was to take charge, he was run over and killed by an engine and caboose in charge of defendant's agents and servants, and which was backing out of the yard, pushing the tender in front and pulling a caboose. This engine, tender and caboose, for brevity we arbitrarily designate as "train No. 50." Averring that it was the duty of defendant's agents and servants in charge of this train, while moving backward in the yard, to keep a lookout in the direction it was moving for decedent and other employees, it is charged that such agents and servants carelessly and negligently failed to do so. Further averring that on the day of decedent's death, and for a long time prior thereto, defendant had a rule in force and effect which required the bells on its engines to be constantly rung while moving in the switch yards at Moberly, and that it was the general and universal custom of defendant, its agents and servants in charge of its engines in the Moberly switch yards, to ring the bell constantly while such engines were in motion therein, and that it was a rule of defendant to sound a "back up" signal by blowing the whistle on a standing engine before the engine was moved backward in the

switch yard at Moberly, it is charged that defendant's agents and servants in charge of this train No. 50 negligently failed to give any "back up" signal before the engine began to move backward, a short time before it struck Walker, and that defendant's agent and servants in charge of that train, and while it was moving backward in the yard, negligently failed to ring the bell or sound the whistle on the engine, or to give any signal whatever of its approach to the decedent, or to give any signal that it was moving. The petition further avers that these agents and servants of defendant negligently and carelessly failed to keep a lookout in the direction the engine was moving, as it moved backward in the switch yard; that if they had used ordinary care and had kept a lookout in the direction the backing engine was moving, they would have seen Walker upon and near the track and in a place of danger, and that he was unaware of his danger of being struck by the backing engine, in time to have warned Walker of his danger by a signal from the engine, and in time, by the use of the appliances at hand, to have stopped the engine before it struck Walker and thereby have averted striking Walker, it is charged that they had negligently failed to do so. It is finally averred that as the engine backed toward and approached near to Walker, the agents and servants of defendant in charge of the engine and caboose, "saw or by the exercise of ordinary care might and would have seen said Charles W. Walker upon or close to said track on which said engine was backing and in a place of peril and danger from being struck by said engine and that said Charles W. Walker was unaware of his danger, in time, by the use of ordinary care, to have avoided hitting, running over, dragging and killing said Walker by said engine and caboose, but carelessly and negligently failed to do so." Averring that

193 App. 17

she had brought her action within six months after the death of her husband; that she was dependent upon him for pecuniary support and by reason of his death had been damaged in the sum of $10,000, she demands judgment for that sum and costs.

Defendant, appearing, filed a motion to elect between what are claimed to be inconsistent allegations in this petition, and that being overruled, filed a motion to strike out certain parts of the petition. This was also overruled and defendant answered. In this answer, after a general denial, defendant pleaded the unconstitutionality of the Act of 1905, above referred to, which (as we have before stated) afterwards disappeared from the case in the Supreme Court.

The reply was a general denial.

When the trial was commenced before the court and a jury, defendant objected to the introduction of any evidence on the ground of the unconstitutionality of the Act, as made in the answer, and also on the ground that the petition did not state a cause of action, in that it did not charge that the decedent was actually seen in a place of peril by the agents and servants in charge of the engine at any time before he was run over, and because the petition further showed on its face that decedent was guilty of negligence which proximately contributed to produce his death. This objection was overruled, defendant excepting, and it may be stated that these objections to the failure of the petition to state a cause of action were frequently interposed during the trial of the cause and also at the close of the evidence by demurrers to the testimony.

As it appeared in evidence, this accident happened about three or four o'clock on the afternoon of August 16, 1911, in the freight yards of the defendant railroad company at Moberly. There were something like eleven tracks there in the yard; the most southerly was the main track; the track immediately north of

that was No. 1; the others lying north in their order were numbered successively 2, 3, 4, 5, 6, and so on. The distance between each track was seven feet; the distance between cars when in place opposite each other on two adjoining tracks was about two feet. The distance between the rails was four feet and eight and a half inches. Mr. Walker was the conductor of a freight train, No. 64, which was being made up on track No. 4, that train to be taken east to a station called Luther, east of Moberly and just north of St. Louis. Four freight cars of Walker's train, with a caboose attached, were in place on track No. 4, and were on the west end of track No. 4, just clear of the east "lead" into that track. Further east down on track No. 4 were some four or five freight cars to be placed in Walker's train, separated from the east car in place on track No. 4 by about thirty car-lengths—say seven or eight hundred feet—a clear track between them and the rear cars in place. Walker was to take out these with his train. On track No. 3 and about opposite these rear cars on track No. 4, was the tender, then the engine, its back in front, facing west, then the caboose, coupled to the front part of the engine. These are what we call "train No. 50." The tender was ten feet wide and twenty-eight feet long.

It was intended to back this train up to Stoutsville, a station east or northeast of Moberly, for the purpose of getting cars and bringing them to Moberly. This combination, or "train 50," had been waiting on this track No. 3 for some twenty-five or thirty minutes for the passing of a train on the main south track. One Heifner was its conductor, Vallelly engineer, Michaels fireman. Mr. Walker was engaged in taking the numbers and marks from the cars that were to be in his train. He apparently had finished with the four cars in the rear of his train and was going forward to the other cars, which were also on track 4 and fur-

ther east, separated, as before said, some distance from these four rear cars. There was evidence to the effect that Vallelly, the engineer, saw Walker just as that engineer started to pull out with his engine and caboose; saw him walking down (that is east) between tracks 2 and 3. Walker was then five or six car-lengths east of this engine and caboose (train No. 50) and had his back toward them. The engineer got on the front end of the caboose next to the engine and went from that to his engine and started it up—started it toward the east. The fireman, Michaels, was on the platform of the caboose next to the engine, and when he saw Vallelly, his engineer, walking toward the engine, he got on the engine. It was a very hot day, and the fireman sat on the north side of the caboose to be in the shade. While sitting there, as he said, he saw Walker, who went by, checking his train on track No. 4. The caboose of Walker's train on track No. 4 was about in line with and opposite the caboose of train No. 50, which was on track 3. As Mr. Walker came by he remarked to this fireman that it was a very warm day "to walk way down there to get a few car numbers;" "a hot day to walk down to the other end of the yards." The fireman testified that he knew from what Walker said that he was going right down to get the car numbers of the cars at the other end; that he started to walk between tracks 3 and 4. The fireman also asked Walker what he was going out on and he said "64." There was a box car on track No. 4, standing opposite the caboose which was on track No. 3, and the fireman testified that he supposed Walker had taken the number of this car, as he wrote something in his train book. Walker then walked forward between tracks 3 and 4, as the fireman testified, and he testified that he did not see him again until after he saw his body lying back on the track, having been passed over by the engine and caboose. They had then run the engine and ca-

boose about eleven or twelve car-lengths, say four hundred and forty to four hundred and eighty feet from the starting point. At the rate it was running the engine could have been stopped in from six to ten feet, said the fireman. This fireman also testified that the east end of Walker's four cars came about up with the caboose which was on track 3, and that his cars were further back, that is west, than the caboose on track 3. The engineer got on his engine on the south side and as he walked across the deck he said to his fireman, ''We are ready to go now,'' whereupon the fireman, as he testified, rang the bell for two or three car-lengths and then went to work putting fire in the engine.

The engineer testified that he saw Walker walking along the north side of track 3, between that and track 4; saw him pass by his (Walker's) train; saw him leave there and walk east between tracks 3 and 4. He testified that he had not seen Walker again alive. The engineer further testified that with the tender pushed in front, as here, he could not see anyone on the track who was closer than seventy feet. Two witnesses testified that sitting in his cab, an engineer could see the center of the track thirty-five feet ahead of the tender; other witnesses testified that no one could be seen from the engine cab who was closer than one hundred and thirty-five feet, and verified photographs were in evidence tending to show that no one could be seen closer than one hundred and sixty-five feet from the tender.

The engineer also testified that the conductor had called to the fireman and the fireman had given him a signal to stop. They had then gone eleven or twelve car-lengths from their starting point, said the engineer. The engineer and fireman and conductor jumped off and went back of the caboose which they had been pulling on track 3 and found Mr. Walker lying in about the center of that track, crushed so that he died in about forty-five minutes after he was found.

The conductor of what we call train No. 50, Heifner, testified that he saw Walker just as his train (the engine and caboose on No. 3) pulled out; he was then walking between tracks 3 and 4 and about five or six car-lengths in front of the tender, which was on track 3. He was walking east, with his back to them. He next saw his body between the rails of track 3; he was badly mashed. When he saw Walker's body the engine had run about ten or twelve car-lengths, he counting a car-length at thirty-two feet. (The engineer and fireman give a car-length "as about forty feet.") He testified that he had not heard any bell rung or whistle blown on his engine.

A boy, who was standing on the back platform of the caboose, and who first discovered Walker's body lying in track 3, and about twenty feet in the rear end of the caboose, notified the conductor. If a bell had been rung or a whistle sounded when the engine started on track 3, this witness testified that he had not heard either; did not notice any sound from either, and that the engine had run "three blocks" from its starting point when it ran over Mr. Walker.

Another witness of the accident, a barber, testifying for plaintiff, said that his shop was a block west of the Wabash depot and near the south track and that he had been going back and forth across the yard and across these tracks, making collections on the street on the north side of the tracks or yard. Going along east between tracks 2 and 3, he met a friend. He had passed about three blocks east and beyond the engine and caboose standing on track 3, and meeting this friend, stopped to talk with him. He was to the south of track 3, and looking west up that track, and while he was talking to this friend, he saw a man walking east down track No. 3. The man was walking between the two rails of track No. 3. He seemed to have a book in one hand and a pencil in the other. While

witness did not see the pencil, every once in a while he would see this man look up to the cars on the track, and appeared to be taking their numbers. The man was walking slowly. Witness saw an engine coming up slowly behind this man. When he first saw it, it was about a block west of the man, moving east in the same direction this man was walking, and about one hundred and fifty feet west of the man. The engine was backing toward the east and as this man on the track walked slowly down the track he was looking at the book which he had in his hand, part of the time looking at that and then looking up. This man on the track had walked a block or such a matter from the time witness first saw him until he was hit. A block, he thought, was about one hundred and fifty feet. The engine was running slowly down behind the man and on the same track. Asked if this engine moving east on track 3 had given any signal of any kind while running along the track, he answered, "If it did I didn't hear it;" that his hearing was good. He saw the engine "creeping up" on this man, who was walking along track 3, and noticed it was not making any noise. "The engine creeped up on him," said the witness, "and knocked him down and he fell face foremost and he scrambled like he was going to get up but it passed over him." Witness then saw a man jump off the back end of the caboose and run towards the man so lying. At the time witness did not know who this man was that had been run over but afterwards identified him as Charles W. Walker. On cross-examination this witness said he thought the engine had moved about two blocks, after he saw it, until it hit Walker. The rear end of the tender which was in front, hit him. When it hit Walker it was about half a block from witness.

There was evidence to the effect that the engineer of the engine on track 3 was sitting in a seat on the

south side of the engine and looking out; the fireman on the north side, also looking out. The barber witness before referred to, testified that he saw the engineer in his seat and looking out of his cab window at witness and his friend, who were south of track 3 and east of "train No. 50." The engineer testified that he knew many people were at work in the yard in the vicinity of where Walker was killed, going back and forth over the tracks; that the trainmen worked around there in such numbers that the yard at that place "was a sort of beehive of human industry," and that on this occasion he had continued to run his engine down through this yard without ringing any bell, after ringing it as the engine first started, and without sounding the whistle; that he knew people were liable to cross and re-cross there. He testified positively that he did not see Walker on his side of the track, that is on the south side of the track, and as before noted, he and the fireman testified that while they had seen Walker going along the space between the third and fourth tracks, they did not see him after the engine started, and did not see him between the rails of track 3.

There was also evidence to the effect that not only the employees of the railroad company used this yard with great frequency, crossing and re-crossing these tracks, but that other persons—the public—very often so used them.

At the close of the evidence in chief and again at the close of all the evidence, defendant, as before noted, demurred. These demurrers were overruled, defendant excepting.

At the instance of plaintiff the court gave two instructions. The first is very long and we will not set it out. The second was as to the measure of damage and we do not understand any objection is lodged to it.

At the instance of defendant the court gave three instructions and refused 9 asked by it. It also gave two instructions asked by defendant but modified them. We will refer to these modifications and to plaintiff's first instruction hereafter. Of its own motion the court gave the jury instructions as to the number necessary to concur in a verdict and the form of verdict to be returned, according to whether the finding was for plaintiff or defendant. There was a verdict for $5000, judgment following, from which defendant has duly appealed, filing a motion for new trial as well as in arrest of judgment.

REYNOLDS, P. J. (after stating the facts).— Learned counsel for appellant, both orally and by printed brief, have argued the case with great ability, and have presented many grounds on which they claim the judgment should be reversed. Their main contentions, however, and those on which we think the case turns, are covered by their first ground, in which it is argued that the petition does not state a cause of action and that the court erred in overruling defendant's objection to the introduction of any evidence.

It is urged under this, that as the petition charges that the operatives of the engine could have seen decedent on the track, it necessarily follows from such alleged fact that the decedent, by looking, could have seen the engine, therefore in failing to see the engine and allowing himself to be struck thereby, decedent was guilty of such contributory negligence as bars a recovery. We cannot agree to the proposition, on the facts here, that because the petition charges that the decedent could have seen the approaching engine, and that failing to see it and get out of danger, he was guilty of contributory negligence barring recovery. The cases cited do not support any such doctrine. The question here as to that is, not could he see, but did he

see the approaching danger, and was he warned of it?

It is further urged that notwithstanding there was a failure to sound the bell and whistle, and that such failure may have been negligence, that unless the petition states a cause of action for a recovery under the humanitarian doctrine, there can be no recovery, it being urged that the petition charged that the decedent was not actually seen but that he could have been seen by the use of ordinary care, and that as the decedent was an employee in the switch yards there was no duty to keep a lookout for him, and the petition "finally fails to state a cause of action."

Degonia v. St. Louis, Iron Mt. & Southern Ry. Co., 234 Mo. 564, 123 S. W. 807; Cahill v. Chicago & Alton Ry. Co., 205 Mo. 393; 103 S. W. 532; Gabal v. St. Louis & San Francisco R. R. Co., 251 Mo. 257, 158 S. W. 12, are relied on in support of the main argument. Particular reliance is placed upon the decision in the Gabal case. On the facts in the case before us we do not think that any of these cases are applicable. The prevailing idea in the Degonia case and those following it, is that the engineer managing the train had a right to expect a clear track at the place where the employees were working. Not only do no such facts appear here, but the direct opposite is the case. The operatives of this engine on track No. 3, as well as all others moving their engines in this yard, had no reason to expect a clear track; on the contrary, they knew that it was more in the nature of a concourse, a place resorted to, not only by the employees in the discharge of their ordinary work for the railroad company, but by other people; that outsiders were constantly in the habit of crossing these tracks in this yard. Hence we hold that the duty was clearly upon them to be on their guard for persons apt to be crossing or using the tracks, and it behooved them, when they were moving their engines through this yard, not only to be on guard, but to give

at least some sign or signal of the fact that they were moving along the tracks through the yard.

The rule of the company given in evidence required that "The engine bell must be rung when engine is about to move." Appellant relies on this rule as not only conclusive but as exclusive. There was also another rule given in evidence that "The unnecessary use of either bell or whistle is prohibited." This is also claimed as in effect prohibiting the ringing of the bell while running through the yard. These are printed rules. There was testimony tending to prove, that outside of these printed and promulgated rules, it was the habit and custom of those moving the engines down through the yard to keep the bell ringing and to sound the whistle while moving. As held by our court in Lewis v. Wabash Railroad Co., 142 Mo. App. 585, l. c. 597, 121 S. W. 1090, "if a settled custom or usage had been followed with the sanction of the company, this was in effect a rule which plaintiff was entitled to have observed for his protection, and the violation of it was as much a tort as if it had been printed and published." While it is true that the rule introduced in evidence required the bell to be rung "when an engine is about to move," it does not follow from this that by custom this rule may not have been enlarged and extended to cover the movement of trains through the yard, and require the bell to be rung while the engine was moving through the yard. There was evidence here of such a rule and custom and that is as binding as if made by formal promulgation. Nor do we understand that the rule prohibiting the unnecessary use of either bell or whistle is here applicable. "Unnecessary" is a very flexible word. It surely does not mean to say that it is unnecessary to sound any warning in a place of danger, as here; a place of common and frequent use. If it means that, it is unreasonable. It is true that in Aerkfetz v. Humphreys,

145 U. S. 418, Mr. Justice Brewer has said (l. c. 420):
"The ringing of bells and the sounding of whistles on
trains going and coming, and switch engines moving
forwards and backwards, would have simply tended
to confusion." There is no evidence that at the time
of the accident any train or any engine was in motion
in these switch yards other than the engine on track
No. 3; no evidence of any noise then and there which
would have prevented Walker from hearing a signal if
one had been given from this engine. While the above
quoted part of Mr. Justice Brewer's opinion is quoted
by our Supreme Court in the Cahill, Degonia and
Gabal cases, supra, we do not think it has been applied
as controlling in such a case as here before us by our
courts. Certainly on their facts none of those cases
meet the case now before us.

In Morgan v. Wabash Ry. Co., 159 Mo. 262, 60
S. W. 185, Judge Valliant has by implication, and in
Bender v. Weber, 250 Mo. 551, 157 S. W. 570, Judge
Lamm has expressly, held (l. c. 561):

"In the next place, a good rule, of every day ser-
vice, is that judgments of appellate courts on one state
of facts may not be applied automatically to another
state of facts, but, contra, the general language in
decisions must be read in the dry light of the very case
held in judgment, and not otherwise." State ex rel.
Bixby et al. v. Kreismann, 241 Mo. 231, l. c. 238 et
seq., 145 S. W. 801, is cited for this, which see.

Even with that rule in mind, it seems to us that
the case which most nearly announced the one here
applicable is that of Morgan v. Wabash Ry. Co., supra.
It is true that case was one in which it was a tres-
passer on the tracks who had been run over and
killed. But it has many features in common with
those here present and we think it applicable in
its announcement of the duty on the part of those
operating a locomotive, who, by reason of the fact

that the locomotive was running backwards, with its tender loaded and piled up above so as to prevent those on the engine seeing ahead, to exercise due care, and in fixing a liability on the employer for damages for neglect in using due care to guard against persons on the track.

In the case at bar there was evidence from which the jury had a right, notwithstanding the evidence to the contrary by the engineer and fireman, to find that these men were negligent in not taking any precaution to see that the decedent or others were not walking along the track. There is strong and persuasive evidence that Mr. Walker was doing so in entire obliviousness of approaching danger. Nor had he any reason to anticipate danger. He knew the engineer and fireman had seen him walking along toward the east; that the fireman knew he was going to the cars at the far eastern end of track 4; that he was in close vicinity to the train on track 3; that it gave no indication of any intended movement, and he had a right to expect that if it did move it would give some signal to manifest that. The testimony for defendant itself tends to show that this engine just "glided" or "drifted" along before overtaking and running over the decedent, making no noise. A witness for plaintiff said it just came "creeping" along towards Walker. Both the engineer and fireman admit that they saw decedent walking down between the tracks just before or as they started. The fireman said he knew, or supposed, Walker was going down to take the numbers of the cars on the far east end of track No. 4. Each of them testified that looking out on the north and south sides of the engine, they did not afterwards see him. What then had become of him? Had the ground opened and swallowed him? He was not in their sight. The most ordinary care should have warned them that as he was not in sight, he was apt to be at no place other

than in front of them and on track 3. The fact that no one nearer than seventy, or one hundred and thirty-five, or one hundred and sixty-five feet in front of the engine (and counsel for appellant claim that the last named measure has been here demonstrated with mathematical accuracy, and that such demonstration of the physical fact must prevail over the mere estimates of witnesses who placed it at as close as thirty-five feet) could be seen from the engine cab, ought to have warned them to cover this blind and dead space by some sort of a lookout. It was their duty to do so. They had no right to drive this machine through this dead—this blind—space, without seeing that it was safe, free from the presence of passersby. So it was held in the Morgan case, supra, and in that case those in control of the engine had a right to expect a clear track. Here they had no such right; on the contrary, they were backing down through a place in common and frequent use.

It is true that the engineer and fireman testified that as they started and as they ran for a couple of car-lengths the engine bell was ringing. The conductor of their train, however, testified that if the bell was rung, he did not hear it and so the boy on the rear of the caboose, and the bystander, the latter the only eyewitness testifying to the transaction, testified. Hence whether the bell was rung at starting, and had been kept ringing while going down the yard, was a question of fact for the determination of the jury. If the jury found as a fact that no warning was given, then, under the facts here, defendant is liable. As said by Judge VALLIANT in Morgan v. Wabash Ry. Co., supra (1. c. 281):

"The very composition of this train, the necessity of running it as it was, the impossibility, under the circumstances, of the engineer and fireman seeing from

their usual positions on the engine the track in front of them, created a necessity for placing some one of the crew where he could see."

In the case at bar, without holding that it was necessary to have placed some one of the crew in front of the tender, we do hold that it was gross carelessness and negligence for the engineer to have run this train through this concourse, frequented by a multitude of employees and outsiders, silently, noiselessly and without any warning whatever. Ordinary regard for the safety of human life, required those operating such a machine as a moving locomotive, to see to it, when running through such a place as this yard, that they had a clear track. Of that duty the operatives of this locomotive, according to their own testimony, were oblivious. Rules or no rules, they had no right to run this machine through this yard without sound or warning. Doing so, under the facts here present, the jury had a right to find, as they did, that defendant is liable.

With these pertinent facts in the case, which were all before the jury, it is unnecessary to attempt to go into the theories which have governed other cases, in an attempt to palliate the obvious and gross carelessness and negligence of these employees of the defendant in this particular instance.

Some point is made against the admission of parol evidence as to the rules and custom covering the ringing of a bell. What we have said here disposes of that.

Referring to the additions which the court made to the instructions asked by defendant, we see no error in these additions. In the first, as asked by defendant, it was sought to instruct the jury "that it was the duty of the deceased when going in and around defendant's yards, to make use of his faculties for his own protection and safety, and if you believe from the

evidence in this case that the deceased went upon the track where a train was standing likely to soon move in his direction, or went upon the track in front of an approaching train, without looking or listening for said train, and if by the exercise of ordinary care on his part he could have seen said approaching train but failed to do so, and was thereby run over and killed, then he was guilty of contributory negligence and plaintiff cannot recover and it is your duty to return a verdict for the defendant.''

In the other instruction as asked by defendant the court was asked to instruct the jury ''that under the law of this case it was the duty of the deceased in going upon tracks in and around the defendant's yards to look out for his own safety and the defendant's agents in charge of said engine were under no duty to notify him of their approach unless they saw him in a place of imminent peril and about to be struck and injured.''

To the first of these instructions the court, over the objection of defendant, added a proviso to the effect that they should so find, ''unless you further believe from the evidence that when decedent was on the track and the train was approaching him, the agents of defendant in charge of the engine saw deceased in a place of imminent peril or could have seen deceased in a place of imminent peril, by the exercise of ordinary care on their part in time to have stopped the engine and avoided injuring deceased.'' And the court added, over the objection of defendant, to the other instruction the proviso that they should find for defendant ''unless they saw him (Walker) in a place of imminent peril and about to be struck and injured, and unless by the exercise of ordinary care defendant's agents in charge of said engine could have become aware that deceased was in a position of imminent

peril in time to have stopped the engine and avoided injuring him.''

We see no error in the addition of these provisos to these two instructions. In each of them the court submitted as one of the questions of fact whether the employees of defendant ''saw'' the decedent in a place of imminent peril. So it did in the first instruction given at the instance of plaintiff. So plaintiff also alleged in her petition, although appellant asserts the contrary in its challenge of that petition. It is true that at the instance of defendant, appellant here, the court gave an instruction, the first sentence of which reads: ''The court instructs the jury that plaintiff admits in this case that the decedent was not seen on the track in front of the engine by the defendant's agents and servants in charge of said engine.'' This so-called admission, as we understand, is supposed to be drawn entirely from the opening statement of the case by, one of the counsel for plaintiff. We do not find any admission as broad as this in the opening statement of counsel, nor do we find it anywhere in the abstract. We cannot agree to the claim of counsel for appellant, that there was no evidence that those in charge of the engine actually saw decedent on the track and in front of the engine as it moved along the track. We do find there was substantial evidence from which the jury might find that those in charge of the engine did see Walker on the track and in a place of danger and apparently unconscious of danger, when he was more than ''a block'' in front of the tender and walking east on the track. He was seen by a witness to be walking east along the center of track No. 3, when he (Walker) was about ''a block'' in front of the tender, the engine then moving east, and this witness says the engineer was looking that way. Decedent walked about a block while the engine was covering two

193 App. 18

blocks and following him. Coupled with this is the engineer's testimony that the engine ran eleven or twelve car-lengths (the length of a car being used as forty feet) from the time it started to move until the engineer was told of the accident, and there is testimony that Walker's body was first seen about twenty feet behind the rear of the caboose, after the engine stopped. As the "train" consisted of only the tender, engine and caboose, a jury would be warranted in finding that Walker was more than one hundred and sixty-five feet from the tender when the latter started, and thus in view, and, furthermore, there is evidence that Walker could have been seen when as close as thirty-five feet from the tender. So even if a man on the track had to be one hundred and sixty-five feet in front of the tender before the engineer could see him, the jury could find that Walker was in view of the engineer, who, according to the evidence, was looking east down the track directly toward decedent.

The law here applicable to this phase of the case is well stated in Lynch v. Chicago & Alton R. R. Co., 208 Mo. 1, l. c. 23, 106 S W. 68, thus:

"It is also in evidence that when this engine returned east following the deceased, it was running backward with the tender in front and it was not only their (those in charge of the engine) duty under such circumstances to keep a lookout, but the evidence shows that only a very few minutes before they struck him they were actually looking ahead. From the time they turned the curve east of the coal chute until they struck him, the track was straight and unobstructed and the day was clear and bright and there was absolutely nothing to keep them from seeing an object as large as a velocipede with a man upon it. Even if they had testified that under these circumstances they did not see Lynch, the jury were not bound to accept their statement as true. [Payne v. Railroad, 136 Mo. l. c. 575.]

As said in the Rine case (100 Mo. 228, l. c. 235), knowledge, like actual notice, may be proved by direct evidence or it may be inferred from facts and circumstances; when it is inferred from the facts and circumstances it is as actually knowledge as when proved by direct evidence; an opportunity to know will under some circumstances go far to show knowledge, and under other circumstances it may be of little value.''

Here, as in the Lynch case, the track was straight, the day clear, and the engineer was apparently looking ahead. Under the evidence in this case, this quoted clause of this instruction, asked by appellant, should not have been given. Not only is it contrary to substantial evidence but it is inconsistent with others given, as noted. Where instructions are inconsistent and conflicting, we are to determine which is erroneous, and where the error is in that given at the instance of appellant, it cannot complain. [Thompson v. Moon Buggy Co., 155 Mo. App. 597, l. c. 609, and cases there cited; 134 S. W. 1088.]

Other points are made by the very learned and industrious counsel for appellant which we do not think necessary to discuss in the view we have taken of the real issue in the case. On the evidence this was a case for the jury. Their verdict is supported by substantial evidence. We see no material error in the instructions given at the instance of the respondent.

Our conclusion upon consideration of the whole case is that there is no reversible error present and that the judgment of the circuit court should be and it is affirmed. *Nortoni* and *Allen, JJ.,* concur.